## Copeland v. Commonwealth.

(Decided April 27, 1926.)

### Appeal from McCracken Circuit Court.

1. Homicide—Where, Under Indictment and Instructions, Jury Might have Found Accused Guilty of Either Voluntary or Involuntary Manslaughter, Verdict Finding Him Guilty as Charged in Indictment and Fixing Punishment at Two Years in Prison Held Insufficient to Authorize Conviction for Voluntary Manslaughter.— Where, under indictment for voluntary manslaughter, jury was instructed thereon, and authorized to impose punishment of not less than 2 nor more than 21 years in penitentiary, and was also instructed on involuntary manslaughter as included in indictment and allowed to fix punishment at imprisonment within their reasonable discretion, verdict finding accused guilty as charged

in indictment and fixing punishment at 2 years in prison held too ambiguous and insufficient to predicate conviction for voluntary manslaughter thereon.

2.    Prisons.—"Prison" may be defined to include every place of confinement of person in custody of the law, but is more frequently associated with state penitentiary.

CROSSLAND & CROSSLAND for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Appellant is accused of the crime of voluntary manslaughter by recklessly and wantonly running an automobile upon and against W. H. Anderson, thereby wounding and killing him.

On this appeal he insists that the verdict of the jury was insufficient to authorize a judgment of conviction for the crime of manslaughter. The verdict reads: "We, the jury, find the defendant guilty as charged in the indictment and fix his punishment for a term of two years in prison. Signed one of the jury, A. T. Bohannon."

The penalty fixed in the instruction on voluntary manslaughter was confinement in the penitentiary for a period of not less than two nor more than twenty-one years. Two instructions were given on involuntary manslaughter. The first was predicated on careless driving, and the jury were told that if they believed such facts to the exclusion of a reasonable doubt they "should find the defendant guilty of involuntary manslaughter, an offense included in the indictment, and should fix his punishment at imprisonment in the reasonable discretion of the jury . . . or both by fine and imprisonment in the jury's reasonable discretion." The third instruction was based on the theory that the defendant was driving his machine at an unlawful rate of speed. After submitting this hypothesis the court told the jury that if they believed as therein predicated they "should find the defendant guilty of involuntary manslaughter, an offense included in the indictment and fix his punishment as provided in instruction No. 2." No other part of the record is pertinent, and the verdict must be construed according to its terms, in the light of those instructions. Was the defendant found guilty of voluntary manslaughter and his punishment fixed at two years in the penitentiary, or of invol-

untary manslaughter and his punishment fixed at two years in the county jail? The *charge* in the indictment is *voluntary manslaughter,* and defendant is found guilty as charged in the indictment. While the word "prison" may be defined to include every place of confinement of a person in the custody of the law, perhaps it is more frequently associated with the state penitentiary, and by the use of this language the jury may have intended to say that they found the defendant guilty of voluntary manslaughter and fixed his punishment at confinement in the penitentiary for two years.

On the other hand, the court had specifically instructed the jury that involuntary manslaughter was a charge included in the indictment, hence their finding defendant "guilty as *charged in the indictment,*" may refer to either voluntary or involuntary manslaughter, and is not of controlling force. Further, the language used does not indicate the sense in which the jury used the word "prison." As the court had instructed them that if they found him guilty of involuntary manslaughter they should fix his punishment at *imprisonment* in their reasonable discretion, without fixing any place of confinement, perhaps the verdict conforms more nearly with the last instruction than it does with the voluntary manslaughter instruction. At all events the language of the verdict and other parts of the record bearing upon it are so uncertain that no one can with reasonable certainty know what the jury did mean. If the ambiguity had been discovered before the jury were discharged the court might have sent them back for a correction, but as it was not discovered until the following day, the court should, on appellant's motion, have set the verdict aside and granted him a new trial.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.