COMMONWEALTH of Kentucky, Appellant,

v.

Russell R. McCLURE, Appellee.

COMMONWEALTH of Kentucky, Appellant,

v.

Melvin YOUNG, Appellee.

Court of Appeals of Kentucky.

Sept. 14, 1979.

Discretionary Review Denied Feb. 7, 1980.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellant.

Joseph J. Leary, Frankfort, Robin Griffin, Miller, Griffin & Marks, Lexington, for appellee, McClure.

Edward F. Prichard, Jr., Prichard, Murrell & Stallard, Sam G. McNamara, Hazelrigg & Cox, Frankfort, for appellee, Young.

Before HAYES, LESTER and WHITE, JJ.

LESTER, Judge.

On October 10, 1978, the Franklin County Grand Jury charged Russell R. McClure with a violation of KRS 45.360(7) because of the manner in which he transferred two state vehicles. The indictment also charged Melvin Young with complicity, as prescribed by KRS 502.020, in connection with the transfer of one of the vehicles.

From among the various grounds asserted by McClure and Young in their motion to dismiss the indictment, the Franklin Circuit Court determined that two of these grounds, each of its own force, required dismissal. The Commonwealth has taken this appeal from the order of dismissal in which the trial court concluded that KRS 45.360 did not carry a valid penalty because the assignment of a penalty to that statute, for the first time, through the process of revision, created a change of substance which exceeded the scope of the revisory bill of 1966. Additionally, the court ruled that the one-year statute of limitations for offenses other than felonies had expired because KRS 45.990(3), which provides the penalty for violation of KRS 45.360, did not describe a felony. The trial court did not consider the merits of the other contentions raised in defendant's motion to dismiss. The appellees urge that we explore in this opinion bases for finding the indictment defective other than those relied on by the court below; however, we decline to follow the appellees' suggestion because we can resolve this appeal on the issues dealt with by the trial court.

Chapter 7 of the Kentucky Revised Statutes sets up a procedure whereby the statutes can be revised and corrected. KRS 7.140 entrusts the duties of preparation of statutory revisions to a reviser appointed by the Legislative Research Commission upon the recommendation of the director. The reviser inserted KRS 45.990(3) as the penalty for violation of KRS 45.360 in performance of his statutory revision function. KRS 7.123 explains the effect of revisory acts. KRS 7.123(4) provides that

> [n]othing in any act to revise and correct the Kentucky Revised Statutes adopted by the general assembly shall be construed to effect any substantive change in the statute law of Kentucky and if any substantive change appears to be effected, it shall be disregarded and the law as it existed prior to the effective date of the revisory act shall be given full force and effect.

The portion of the court's order which declared KRS 45.990(3) ineffective as the penalty for violation of KRS 45.360 rested on the premise that since KRS 42.060, the predecessor of KRS 45.360, did not have a penalty, the act of revision which made a course of conduct a crime that had not been previously punishable, impermissibly resulted in a substantive change.

The Commonwealth's attack on the court's reasoning in relation to the viability of KRS 45.990(3) involves a discussion of the evolution of the statutes pertaining to state purchasing. We shall begin our review of these statutes with KRS 42.060 and KRS 42.070, because as the Commonwealth has observed in its brief, the legislature's enactment of KRS 42.060 and KRS 42.070 in 1942 did not significantly alter the prior law.

KRS 42.060 established the Division of Purchases and described in general terms how the Division would oversee the property acquisitions for all state agencies. The statute also contained this statement as to the Division's role in the disposal of surplus property:

> It [the Division] shall sell all property (including real estate) of the state determined, with the approval of the Commissioner of Finance and the Governor, not to be needed for public use or to have become unsuitable for such use. KRS 42.060(2).

No statutory provision imposed criminal sanctions for a violation of KRS 42.060.

KRS 42.070 delineated the procedures to be followed by the Division of Purchases before it let a contract for materials, supplies or equipment. The statute called for the submission of bids by businesses interested in selling to the state. The bidding requirement sought to insure that the departments of government would have their supply needs fulfilled at the lowest price. The Division had wide discretion in selecting the "lowest and best bidder"; the statutory language indicated that the legislature contemplated that the Division, in making its choice, would take into account factors other than just the cheapest price. *See R.*

*G. Wilmott Coal Co. v. State Purchasing Commission,* 246 Ky. 115, 54 S.W.2d 634 (1932).

KRS 42.990 listed the penalties which applied to certain violations of state contracting methods. The section of the statute which related to transgressions of KRS 42.-070 expressed the penalty in the following terms:

> Any violation . . . shall be punished by a fine of not more than five thousand dollars ($5,000) or by a prison sentence of not more than five (5) years, or by both fine and imprisonment in the discretion of the jury.

In 1954, this section received the designation of KRS 42.990(2).

The General Assembly in 1964 amended, for the purposes of reform, many of the statutes dealing with finance. This statutory renovation affected the substance of KRS 42.060 and KRS 42.070. The change resulted in the emergence of KRS 45.360 and KRS 45.390 out of the discarded KRS 42.060 and KRS 42.070. The legislature, however, left intact KRS 42.990; consequently, KRS 42.990(2) stated a penalty for the violation of the statute KRS 42.070 which had been repealed.

Both KRS 45.360 and KRS 45.390 come under the heading in the Budget and Financial Administration Chapter entitled "State Purchasing." Although the comprehensiveness and detail of KRS 45.360 reflect the complexity of modern government, it retains the basic thrust of its source, KRS 42.060. KRS 45.360, as did its predecessor, delegates the purchasing powers within the framework of particular guidelines. KRS 45.360(7) covers the disposal of property in language more explicit than that formerly found in KRS 42.060. KRS 45.360(7) added this directive which the grand jury accused McClure and Young of violating:

> . . . The determination of the secretary of the executive department for finance and administration [that property is not needed or has become unsuitable for public use] shall be set forth in an order, and shall be reached only after review of a written request by the agency

desiring to dispose of the property . . Unless the secretary of the executive department for finance and administration deems it in the best interest of the state to proceed otherwise, all such property (including any interests in real property) shall be sold either by invitation of sealed bids or by public auction, . . . .

KRS 45.390 expanded and reorganized the structure of KRS 42.070; however, KRS 45.390 still serves the policy of providing a purchasing scheme which allows the agencies to satisfy their requirements in an efficient manner. Through the enactment of KRS 45.390 the legislature sought to improve and update the methods used in connection with the solicitation of competitive bidding.

In 1966, the reviser compiled a reviser's bill for introduction during the regular session. Among the many revisions in Chapter 255, the bill passed by the General Assembly, the reviser addressed the problem of the penalty provisions left outstanding in KRS 42.990. The reviser accomplished his task as to these penalties by transferring subsections (2) through (6) to KRS 45.990. The only change the reviser effected as to KRS 42.990(2) in the transition was to put 42.070 in brackets behind the reference to KRS 45.360; therefore, the penalty ostensibly applied to KRS 45.360, the apparent successor of KRS 42.070, in this section of the reviser's bill.

The circuit court correctly observed that KRS 42.070 furnished the source for KRS 45.390, not for KRS 45.360. KRS 45.360 originated from KRS 42.060 which did not have a penalty. The court aptly reasoned that the placement of a penalty on KRS 45.360 made it a crime to violate a type of statute that had never before imposed criminal sanctions, and that the creation of a new crime for a breach of the particular statute involved went beyond the authorized purview of the reviser's bill.

The appellees contend that KRS 45.360 appears in Section 54 of the reviser's bill instead of KRS 45.390 because of a typographical error. We deem this interpretation reasonable. We have previously noted that KRS 42.070 was the prototype for KRS 45.390. Evidence that the reviser did not have a contrary view about the beginnings of KRS 45.390 is located in Section 49. In this section, a bracketed 42.070 follows the listing of KRS 45.390; therefore, the accurate positioning of 42.070 as the source of KRS 45.390 in Section 49 indicates that the reviser intended to insert KRS 45.390 rather than KRS 45.360 in Section 54. The explanation that KRS 45.360 became connected with the penalty of KRS 42.990(3) through a mistake maintains consistency with the statutory background of KRS 45.360 and KRS 45.390.

The Commonwealth, however, maintains that Section 54 as written conforms with the legislative intent expressed in the reorganization of Chapter 45 during the 1964 session. We shall state the Commonwealth's position as to why it believes KRS 45.990(3) belongs as the penalty for violation of KRS 45.360. The General Assembly, by enacting KRS 45.360 and KRS 45.390, took a major departure from the prior law and created two complementary sections. Unlike the relationship of KRS 42.060 and KRS 42.070, KRS 45.360 assumed prominence in Chapter 45. Because of the alteration in the state purchasing statute, the attachment of a penalty to either KRS 45.390 or 45.360 would penalize certain conduct for the first time. Therefore, even if the reviser had connected KRS 45.990(3) to KRS 45.390, the reasoning employed by the court would still invalidate the penalty; such a result would thwart the intent of the legislature. Thus, the court took too narrow a view of the function of the reviser. The reviser had the task of harmonizing the old penalties of KRS 42.990 with the reconstructed state purchasing statutes of Chapter 45. The reallocation of the penalty contained in KRS 42.990(2) to KRS 45.360 only reflected the priorities established by the legislature in Chapter 45 and did not amount to a substantive change within the meaning of KRS 7.123(4).

The Commonwealth's proposition, which we have just outlined, does not persuade us. Our review of the history of KRS 45.360

and KRS 45.390 has not shown us a rise to preeminence by KRS 45.360 in the state purchasing scheme. KRS 45.360 and KRS 45.390 essentially operate to the same ends, as did KRS 42.060 and KRS 42.070. KRS 45.360 carries on from KRS 42.060 in the delegation of the purchasing power. KRS 45.390 has taken over from KRS 42.070 the description of the procedures used in the solicitation of competitive bidding. We have not discovered an aspect of the 1964 legislative amendments which demonstrates a desire to penalize a delegation statute with a penalty taken from a statute that regulates the solicitation of bidding.

■ The Commonwealth submits that because the legislature modified the bidding statute in 1964, application of the former penalty to KRS 45.390 would also amount to a substantive change under the reasoning of the trial court. This assumption becomes significant in the argument of the Commonwealth because its analysis takes for granted that the penalty of KRS 42.990(2) must apply to some statute in the state purchasing section. However, we do not reach the question of whether KRS 45.990(3) could, through a revisory act, constitute a valid penalty for violation of KRS 45.390. The only decision that we need to make in conjunction with this facet of the case is that a revisory act cannot graft a penalty onto a class of statute that the legislature passed without a penalty. *Fiscal Court of Jefferson County v. City of Anchorage*, Ky., 393 S.W.2d 608 (1965); KRS 7.123(4).

■ The court below also ruled to quash the indictment upon the independent basis of the expiration of the one-year statute of limitations for offenses other than felonies. We believe it appropriate to answer the appellant's challenge to this segment of the court's order, even though we have already resolved this appeal in favor of the action of the court.

KRS 45.990(3) does not contain a felony offense, and therefore, the appellees could not be prosecuted under this provision because the one-year statute of limitations has run. KRS 500.050 governs the time limitations for criminal offenses. This statute reads in part:

(1) Except as otherwise expressly provided, the prosecution of a felony is not subject to a period of limitation and may be commenced at any time.

(2) Except as otherwise expressly provided, the prosecution of an offense other than a felony must be commenced within one (1) year after it is committed.

KRS 431.060 explains the difference between felonies and misdemeanors this way:

Offenses are either felonies or misdemeanors. Offenses punishable with death or confinement in the penitentiary are felonies. All other offenses, whether at common law or made so by statute, are misdemeanors.

In an effort to convince us that KRS 45.990(3) designates a felony offense, the Commonwealth draws upon the wording of the statute that calls for a maximum five-year imprisonment and that mentions prison in specifying the type of sentence a violator would serve. However, the language of KRS 45.990(3) does not have the definiteness to delineate a felony.

The Commonwealth states that the case law usually equates prison with penitentiary. But, *Copeland v. Commonwealth*, 214 Ky. 209, 282 S.W. 1077 (1926), acknowledges that while common usage frequently associates prison with penitentiary, the word prison is a generic term which includes "every place of confinement of a person in the custody of the law." Therefore, the mere use of the word prison in ·KRS 45.990(3) does not make the statute a felony.

■ The Commonwealth next tries the approach of bootstrapping KRS 45.990(3) into the felony class. The Commonwealth claims that because KRS 45.990(3) fixes a maximum term of five years, the statute has an indeterminate sentence. KRS 532.-100 requires the court to commit a defendant who has received an indeterminate sentence to the bureau of corrections, which results in confinement in a state penitentiary. Also, KRS 532.060 prescribes that "[a] sentence of imprisonment for a felony shall

be an indeterminate sentence . . . ." The difficulty with the Commonwealth's logic is that an indeterminate sentence is imposed on a felony because the offense is a felony; the offense is not a felony because it has an indeterminate sentence. In addition, the sentence of KRS 45.990(3) does not impute any more of an indeterminate term than does the sentence for a Class A misdemeanor which establishes a period not to exceed twelve months.

KRS 45.990(3) does not inform the reader that a violation constitutes a felony. The sanction of KRS 45.990(3) does not fit the penalties of either the felonies or the misdemeanors enumerated in the Penal Code. In a situation such as this when the statute does not clearly indicate the type of offense, the courts regard the offense as a misdemeanor. *James v. Commonwealth,* Ky., 259 S.W.2d 76 (1953); *Ex Parte Cain,* 20 Okl. 125, 93 P. 974 (1908). Furthermore, other penalties in the old KRS 42.990 particularized when an offense was a felony. Consequently, if the legislature had intended KRS 45.990(3) to be a felony, it would have accordingly stated that it was a felony.

The judgment is affirmed.

All concur.