Paul BRANZBURG, Petitioner,

v.

J. Miles POUND, Judge, Jefferson Circuit
Court, Criminal Branch, Second
Division, Respondent.

Court of Appeals of Kentucky.

Nov. 27, 1970.

As Modified on Denial of Rehearing
Jan. 22, 1971.

Edgar A. Zingman and Robert C. Ewald, Wyatt, Grafton & Sloss, Louisville, for petitioner.

Edwin A. Schroering, Commonwealth's Atty., Carl C. Ousley, Jr., First Asst. Commonwealth's Atty., Louisville, for respondent.

VANCE, Commissioner.

The petitioner, Paul Branzburg, a staff writer for the Louisville Courier Journal, produced an illustrated story entitled "THE HASH THEY MAKE ISN'T TO EAT" which was published in the Courier Journal on November 15, 1969 and revealed how a copious quantity of marijuana was converted into the more potent drug *hashish* for which a locally profitable and ready

market impliedly existed. The story was based upon information acquired by the writer's observation during an interview granted to him upon a pledge that the identity of the two producers of *hashish* would not be revealed.

When summoned to appear before the Jefferson County Grand Jury ten days later, Branzburg refused to disclose the identity of the men. He was ordered to reappear before the grand jury and threatened with contempt penalties if he persisted in his refusal to answer the questions propounded. We stayed further proceedings until the intrinsically important legal issues presented could be given more consideration.

Marijuana (cannabis) is defined as a narcotic drug by statute, KRS 218.010(14), and unlicensed possession or compounding of such drugs is a felony punishable by both fine and imprisonment. KRS 218.210. Therefore Branzburg saw the commission of the statutory felonies of unlawful possession of marijuana and the unlawful conversion of it into hashish.

KRS 421.100 provides:

"No person shall be compelled to disclose in any legal proceeding or trial before any court, or before any grand or petit jury, or before the presiding officer of any tribunal, or his agent or agents, or before the General Assembly, or any committee thereof, or before any city or county legislative body, or any committee thereof, or elsewhere, the source of any information procured or obtained by him, and published in a newspaper or by a radio or television broadcasting station by which he is engaged or employed, or with which he is connected."

The petitioner concedes in his argument before this court that the general weight of authority is that there is no constitutional guarantee of the privilege he seeks, (see Garland v. Torre, 259 F.2d 545, Second Circuit, certiorari denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958)), and petitioner submits that the only question before this court is the meaning of the words *source of any information* as used in KRS 421.100.[1]

On behalf of the respondent, it is urged that *source of information* refers to an informant and that the statute was enacted to allow and to encourage a person having knowledge of matters which should be called to public attention to make those matters known without revealing his identity and without subjecting himself to the possibility of vengeance, retribution or public embarrassment which might be brought upon him by a revelation of his identity.

The petitioner, on the other hand, contends that *source of information* should be construed to mean all knowledge received by a newsman no matter what the source.

---

1. Petitioner raised the question of constitutional privilege and conceded that the weight of authority was that no such constitutional privilege existed in the following language:

"Although the general weight of authority seems to hold that there is no constitutional guarantee to such a privilege, there does seem to be a minority viewpoint that there is such a privilege existing under the first amendment." (Petitioner's supplemental memorandum—page 2.)

Petitioner then abandoned the claim of first amendment privilege, as follows:

"Thus, the controversy continues as to whether a newsman's source of information should be privileged. However, that question is not before the Court in this case. The Legislature of Kentucky has settled the issue, having decided that a newsman's source of information is to be privileged. Because of this there is no point in citing Professor Wigmore and other authorities who speak against the grant of such a privilege. The question has been many times debated, and the Legislature has spoken. The only question before the Court is the construction of the term 'source of information' as it was intended by the Legislature." (Petitioner's supplemental memorandum—page 4.)

Accordingly, this opinion limits itself to the construction of the statute.

He argues, in effect, that when a newsman observes something, the thing observed is itself the source of the information.

■ At the outset we observe that at common law no privilege existed in favor of communications made to newsmen. In re Goodfader, 45 Haw. 317, 367 P.2d 472 (1961); Brewster v. Boston Herald-Traveler Corp., D.C., 20 F.R.D. 416 (1957); 58 Am.Jur., Witnesses, Section 546; 97 C.J.S. Witnesses § 259, See Annotation 7, A.L.R. 3rd 591.

■ KRS 421.100 which grants a newsman the privilege against disclosing his *source of information* is therefore a statute in derogation of the common law. The rule that statutes in derogation of the common law should be strictly construed does not apply in Kentucky. KRS 446.080. Nevertheless some limitations by way of statutory construction have been placed upon statutes relating to privileged communications and it is elementary that a privilege which did not exist at common law cannot be asserted under a statute unless it is clear that the statute was intended to grant the privilege.

In construing KRS 421.210(4) relating to privileged communications to attorneys, the identity of one employing an attorney to return stolen merchandise was held not privileged because such employment of an attorney was not in his professional capacity. Hughes v. Meade, Ky., 453 S.W.2d 538 (1970). Communication made to an attorney in his professional capacity was nevertheless denied privilege when the person making the communication subsequently employed another attorney and sought to maintain a fraudulent action which would have been defeated by the disclosure of the alleged privileged communication. Fidelity-Phenix Fire Ins. Co. of New York v. Hamilton; Ky., 340 S.W.2d 218 (1960). Communications to an attorney of an intention to commit future crimes or frauds are not entitled to privilege under the statute. Cummings v. Commonwealth, 221 Ky. 301, 298 S.W. 943 (1927) and Standard Fire Ins. Co. v. Smithhart, (1919), 183 Ky. 679, 211 S.W. 441, 5 A.L.R. 972.

■ It is the opinion of this court that the language of KRS 421.100 granting immunity to a newsman from disclosing the *source of any information* procured or obtained by him, grants a privilege from disclosing the source of the information but does not grant a privilege against disclosing the information itself.

■ *Information* as used in the statute refers to the things or the matters which a reporter learns and *source* refers to the method by which or to the person from whom he learns them.

In this case the reporter learned that two men were engaged in the process of making hashish. Their identity, as well as the activity in which they were engaged, was a part of the *information* obtained by him, but their identity was not the *source* of the information.

The actual *source* of the information in this case was the reporter's personal observation. In addition some informant may have provided him with information that at a certain time and place he could observe the process of conversion of marijuana into hashish. If such was the case we have no doubt that the identity of the informant was protected by the statute.

The reporter, however, was not asked to reveal the identity of any such informant and his privilege from making that disclosure is not in question. He was asked to disclose the identity of persons seen by him in the perpetration of a crime and he refused, urging as a justification for such refusal, that the statute should be given a broad construction extending his privilege against disclosure to all his knowledge of this incident rather than just the source of the knowledge.

The harm which ultimately might result to society from letting the reporter maintain his silence as to the identity of those seen by him in the commission of the crime in the instant case might not be earth-

shaking but we must consider where such a course could lead us.

Suppose a newsman or reporter should see the President of the United States or the Governor of the Commonwealth assassinated upon the street; or see a bank robbery in progress; or see a forcible rape committed. Under the construction of the statute sought by the petitioner, such a reporter could not be compelled to identify the perpetrator of the crime. We do not think the legislature ever intended such a result.

Support for the proposition that no such carte blanche privilege was intended is found in the limiting language of the statute requiring a publication of the information before any privilege attaches against disclosure of the source thereof.

In all likelihood the present case is complicated by the fact that the persons who committed the crime were probably the same persons who informed Branzburg that the crime would be, or was being, committed. If so, this is a rare case where informants actually informed against themselves. But in that event the privilege which would have protected disclosure of their identity as *informants* cannot be extended beyond their role as informants to protect their identity in the entirely different role as perpetrators of a crime.

█  For the reasons herein given we feel that KRS 421.100 does not extend to the petitioner a privilege to refuse to answer the specfic questions asked of him by the Jefferson County Grand Jury. The petition for writ of prohibition and writ of mandamus is hereby dismissed.

MILLIKEN, PALMORE, OSBORNE, STEINFELD and REED, JJ., concur.

NEIKIRK, J., not sitting.

EDWARD P. HILL, JR., Chief Justice (dissenting).

I respectfully dissent from the majority's opinion interpreting an act of the Legislature (KRS 421.100) that has been the law of our Commonwealth for more than thirty-four years without being heretofore questioned in the courts.

I shall not attempt to reiterate in this dissent the facts of the case but shall go right to the heart of the question. The majority opinion to my mind has adopted a strained and unnecessarily narrow construction of the term "source of any information procured or obtained" used in KRS 421.100. I believe that the phrase "source of any information" is a broad, comprehensive one, certainly not a technical phrase.

The majority opinion stands for the proposition that the statute in question does not apply in instances in which a newspaper reporter witnesses the commission of a crime. But the statute does not place any such limitation on the privilege. It certainly would have been no trouble for the Legislature to have provided for an exception to the privilege had it thought one advisable. The statute in question is the expression of public policy by the proper branch of government, the Legislature, after nearly 150 years' experience, and this court has no business interfering with great and fundamental policy questions of our system of government.

It must be remembered that the present case does not involve injury to life, limb, or property. But even if it did, we have a situation requiring the balance of values, and I believe, as apparently did the Legislature, that the benefits to society from thoroughly and correctly reporting current events greater outweighs the probable and highly imaginary possibility of their abuse under the statute. Who ever heard of a man about to commit a crime against life, limb, or property either calling in a newspaper reporter or soliciting a newspaper reporter to witness the crime upon being assured that the reporter would not disclose what he was about to observe? Actually, the privilege provided in the statute is one which the newspaper people may weigh,

and I have greater confidence in the newspaper world than to think it would participate in such an imaginary scheme or refuse to divulge important information obtained under such circumstances.

I recognize that the authorities in this country are not uniform with respect to whether newspapers have the privilege safeguarded by our statute and guaranteed by the First Amendment to the Constitution of the United States. See 47 Oregon L.Rev. 243 (1968), and 82 Harv.L.Rev. 1384 (1969). However, I am unable to find any authority from any state refusing to give such privilege a broad interpretation when a statute has been enacted by the legislature of such state safeguarding that privilege.

For an excellent summary of various newspapermen immunity statutes see D'Alemberte, "Journalists Under the Ax: Protection of Confidential Sources of Information," 6 Harv.L.Legis. 307 (1969).

I conclude this dissent by quoting In re Taylor, 412 Pa. 32, 193 A.2d 181, 185, 7 A.L.R.3d 580, 587 (1963):

"It is a matter of widespread common and therefore of Judicial knowledge that newspapers and news media are the principal source of news concerning daily local, State, National and international events. We would be unrealistic if we did not take judicial notice of another matter of wide public knowledge and great importance, namely, that important information, tips and leads will dry up and the public will often be deprived of the knowledge of dereliction of public duty, bribery, corruption, conspiracy and other crimes committed or possibly committed by public officials or by powerful individuals or organizations, unless newsmen are able to *fully and completely* protect the sources of their information. It is vitally important that this public shield against governmental inefficiency, corruption and crime be preserved against piercing and erosion.

\* \* \* \* \* \*

"The Act of 1937 is a wise and salutary declaration of public policy whose spiritual father is the revered Constitutionally ordained freedom of the press. The Act must therefore, we repeat, be liberally and broadly construed in order to carry out the clear objective and intent of the Legislature *which has placed the gathering and the protection of the source of news as of greater importance to the public interest and of more value to the public welfare* than the disclosure of the alleged crime or the alleged criminal."

I would issue the writ of prohibition sought herein.