Paul BRANZBURG, Petitioner,

v.

Henry MEIGS, Judge, Franklin Circuit Court, Frankfort, Kentucky, Respondent.

Court of Appeals of Kentucky.

Jan. 25, 1971.

Edgar A. Zingman, Wyatt, Grafton & Sloss, Louisville, for petitioner.

VANCE, Commissioner.

The petitioner, Paul Branzburg, is a reporter for the Courier-Journal and Louisville Times Company, a publisher of newspapers in Louisville, Kentucky, with statewide circulation. On January 10, 1971, there appeared in the Courier-Journal and Louisville Times a story written by petitioner based upon information acquired by him concerning the use of illegal drugs and narcotics in Franklin County, Kentucky.

On January 18, 1971, the petitioner was subpoenaed to appear as a witness before the Franklin County grand jury to testify in the matter of violation of statutes concerning use and sale of drugs. On that same day, petitioner filed in the Franklin Circuit Court a motion to quash the grand jury subpoena and sought to be excused from appearing before the grand jury.

The motion to quash was denied and petitioner is now faced with contempt proceedings if he fails to appear before the grand jury as directed. This original action seeks an order prohibiting the judge of the Franklin Circuit Court from proceeding against the petitioner by contempt proceedings and directing said judge to sustain petitioner's motion to quash the subpoena.

Petitioner asserts that he is entitled to this relief by reason of KRS 421.100, §§ 1, 2, and 8 of the Kentucky Constitution and the First and Fourteenth Amendments of the United States Constitution.

KRS 421.100 is a statute providing in substance that no person may be compelled to reveal the source of any information procured or obtained by him and published in a newspaper or by a radio or television station with which he is connected. This statute, interpreted recently by this court in Branzburg v. Pound, Judge, Ky., 461 S.W.2d 345 (1970), grants a privilege against revealing the source of a reporter's information but does not protect the information itself and does not purport to offer immunity from subpoena.

Sections 1 and 2 of the Kentucky Constitution are not directly related to freedom of the press and in the arguments before this court, the petitioner has not suggested the manner in which either of these sections affords him relief in the present situation.

Section 8 of the Kentucky Constitution provides:

"Printing presses shall be free to every person who undertakes to examine the proceedings of the general assembly or any branch of the government, and no law shall ever be made to restrain the right thereof. Every person may freely and fully speak, write and print on any subject, being responsible for the abuse of that liberty."

This section has been construed by this court in the following language:

"By the provisions of the United States and the state constitutions guarantying [sic] the 'freedom of the press' it was simply intended to secure to the conductors of the press the same rights and immunities that are enjoyed by the public at large. The citizen has the right to speak the truth in reference to the acts of government, public officials, or individuals. The press is guaranteed the same right, but no greater right. The citizen has the right to criticise the acts of the government, provided it is with the good motive of correcting what he believes to be existing evils, and of

bringing about a more efficient or honest administration of government. For like purpose and like motive he may criticise the acts of public officials; and, for the honest purpose of better subserving the public interests, he may criticise the fitness and qualifications of candidates for office, not only in respect to their ability, fidelity, and experience, but in respect to their honesty and personal habits. *The press has precisely the same rights, but no more."* (Emphasis ours.) Riley v. Lee, 88 Ky. 603, 11 S.W. 713 (1889).[1]

The general weight of authority is that the First Amendment does not extend a privilege to a reporter's source of information. Garland v. Torre, 259 F.2d 545, (2d Cir.) certiorari denied, 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1953). The petitioner relies upon a new interpretation of the First Amendment announced in Caldwell v. United States, 434 F.2d 1081 (1970), a case decided by the United States Court of Appeals, ninth circuit, on November 16, 1970. In that case, Caldwell was a reporter for The New York Times who specialized in reporting news of the Black Panther Party. A federal grand jury investigating the *possibility* of Black Panther involvement in crime subpoenaed Caldwell as a witness. He moved to quash the subpoena and presented substantial evidence by affidavit from which it was concluded by the court that even his appearance before the grand jury would infringe the constitutional guarantees of the First Amendment in that (1) it would have a chilling effect upon and would therefore impede his ability to gather news and, (2) it would induce a form of self-censorship in that in deciding what to publish he

would consider the possibilities of later subpoena.

The court held that these infringements upon First-Amendment freedom were not justified since it appeared from Caldwell's affidavit that he had no information which was not privileged by a protective order granted him by the district court judge.[2]

The posture of the case thus was that if the reporter appeared before the grand jury, First-Amendment rights would suffer and the government would gain nothing. But, on the other hand, if he were relieved of the obligation to appear, the government would lose nothing and First-Amendment rights would not suffer. A balancing of these competing rights led the court to quash the subpoena, holding, "that where it has been shown that the public's First-Amendment right to be informed would be jeopardized by requiring a journalist to submit to secret grand jury interrogation, the government must respond by demonstrating a compelling need for the witness' presence before judicial processes properly can issue to require attendance."[3]

It is important to keep in mind that the issue is not the protection of the petitioner's source of information since those sources are protected by KRS 421.100. The only question here is whether, conceding the right to protect sources of information, petitioner can be required even to appear before the grand jury?

Petitioner does not bring himself within the rule announced in *Caldwell*. Whereas Caldwell presented substantial evidence that his appearance before the grand jury would have a chilling effect upon his sources of information, the record before

1. This case refers to the Kentucky Constitution adopted in 1850 but Article 13, § 9 of that Constitution relating to freedom of the press was for all practical purposes identical with § 8 of the present Constitution.

2. The district judge refused to quash the subpoena but did give Caldwell a pro-

tective order substantially similar to the protection given by KRS 421.100.

3. We quote this language from the Caldwell opinion because of its reference to the *public's First-Amendment right to be informed*, whereas the express language of the First Amendment prohibits the enactment of any law abridging freedom of the press or freedom of speech.

us contains no evidence other than petitioner's allegation that the general public, or the drug-using portion of it, would be so chilled by the mere appearance of Mr. Branzburg before a grand jury that it would cease speaking to him or furnishing information to him. The conclusion that such a chill would in fact occur is not necessary by implication for, after all, these people were speaking to him and furnishing information to him before he wrote the story in question and at that time they certainly had no assurance that he might not be required to appear at some time before a grand jury.

In the second place, a major factor in the *Caldwell* decision was an affidavit by Caldwell that he did not have any information which would not be privileged by the protective order and that his appearance before the grand jury would be an exercise in futility.

In this case, petitioner has not filed any similar affidavit and a reading of the story published by him regarding use of illegal drugs in Franklin County, Kentucky, would induce a reasonable belief of the probability that petitioner may have witnessed the commission of various crimes in Franklin County, involving either the sale, use or possession of drugs or narcotics. Thus we do not believe that petitioner is within the rule announced in Caldwell v. United States, supra.

Aside from this we have misgivings about the rule announced in *Caldwell.* It represents a drastic departure from the generally recognized rule that the sources of information of a newspaper reporter are not privileged under the First Amendment.

The grand jury, itself a bulwark of freedom specifically recognized by the United States Constitution, is deeply embedded in the philosophy of human rights, dating back to early English law. Historically its function has been the investigation of charges of crime, but it is not an arm of the police. It is an instrument of the people, which on one hand insulates citizens from over-zealous prosecution, yet on the other hand has broad power to investigate criminal activities and other matters detrimental to the public interest.

The proceedings before a grand jury are secret and one ground of justification for secrecy is the protection that it affords to those who may be the subject of investigation on charges which prove to be without merit.

In Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919), it was held that attendance before grand juries in answer to subpoena is a public duty which every person is bound to perform and that the personal sacrifice involved is a part of the necessary contribution to the welfare of the public.

Any restriction upon the right of a grand jury to compel attendance of witnesses before it is a direct and obvious impediment to its functioning, but whether compulsory attendance is an infringement of First-Amendment rights is much less evident. Some day a situation may arise in which compulsory attendance before a grand jury would so seriously jeopardize constitutional rights as to require quashing the subpoena, but such a situation is not presented by the facts of this case.

█ The speculation that the mere appearance of a news reporter before a grand jury might jeopardize his rapport with the segment of society known as the drug culture, causing its loss of confidence in him and thereby inhibiting his ability to obtain information, is so tenuous that it does not, in the opinion of this court, present an issue of abridgement of the freedom of the press within the meaning of that term as used in the Constitution of the United States.

The petition for order of prohibition and order directing that subpoena be quashed is denied.

All concur.