**THE LEXINGTON HERALD–LEADER COMPANY, Movant,**

v.

**Flossie C. BEARD, Bob Boone, Grace M. Donnelly, Kathy D. Greer, Connie S. Heird, Peter H. Laws, Karen M. Meekins, Lori G. Miller, Vicky Rankin, Martha Robertson, Kay Shannon, William A. Stallings, and Danielle G. Twining, Respondents.**

Supreme Court of Kentucky.

Dec. 20, 1984.

Rehearing Denied June 13, 1985.

Carl Timothy Cone, Elsa Goss Black, Stoll, Keenon & Park, Lexington, for movant.

Thomas H. Burnett, David M. Andrews, Lexington, for respondents.

LEIBSON, Justice.

This case involves the scope of discovery in a libel case.

Respondents are thirteen former employees of the University of Kentucky's Tobacco and Health Institute who sued the movant, a Lexington newspaper, claiming that the newspaper had published a series of articles about the Institute containing false and defamatory statements that the respondents were "fired," that they were "incompetent, crooked, or useless," and that the Institute was a "cesspool."

In June, 1981, shortly after suit was filed, the respondents served a subpoena duces tecum on three reporters involved in the publication of the allegedly defamatory articles directing them to produce at deposition "all documents of whatever nature relating to the matters in controversy herein, including but not limited to any memoranda of interviews, records of people interviewed, notes of whatever nature, memoranda of phone calls, reports of independent agencies, and any and all other materials acquired during the course of investigation or preparation of the newspaper stories referred to in the complaint ...."

The movant responded with a motion to quash, alleging the material was "nondiscoverable, at this time, by virtue of the First Amendment to the United States Constitution and KRS 421.100."

The matter was argued but was not ruled upon until February 16, 1983. In the interim the court had required the movants, as plaintiffs, to pursue other methods of discovery which included deposing the former director of the Institute at the time, to whom much of the information reported was attributed, and serving and answering extensive interrogatories.

█ It was only after this discovery had failed to produce answers to basic questions as to what information was in the possession of the reporters at the time of publication that the trial court overruled the motion to quash while imposing certain "conditions." These conditions included that the newspaper would be "permitted to furnish copies of the reporters' notes in

lieu of the original thereof," would be permitted "to delete from the copies ... such portions of the notes as refer solely to matters other than the issues raised by the allegations of the complaint," and would be entitled to a further hearing whenever there was "any doubt as to whether material should or should not be deleted."

Simply stated, the key question in this case is whether or not the articles published were based on information in the possession of the reporters at the time, and the respondents claimed that as a practical matter there was no reasonable or practical alternative to the subpoenas duces tecum for obtaining such discovery at the point where the trial court acted to overrule the newspaper's motion to quash, which was further qualified by its protective order. Further, the respondents concede as a fact for purposes of this case that the order as restricted to furnishing "copies of the reporters' notes in lieu of the original," means that the *names* of the informants shall be deleted, thus recognizing the statutory privilege conferred by KRS 421.100 protecting news media from disclosure of "the source of any information procured or obtained by [a reporter], and published in a newspaper...." [1]

The trial court specified that its discovery order should be a final order subject to appeal. CR 54.02. In March 1983 the newspaper perfected an appeal to the Court of Appeals, seeking to raise statutory and constitutional questions as to the discovery required by the trial court's order. In March 1984 by "Opinion and Order," the Court of Appeals dismissed the newspaper's appeal on grounds that "[d]espite the recitation of finality in the order ... the order is interlocutory in nature and does not finally adjudicate the rights of the parties below." The Court of Appeals cited *Hook v. Hook*, Ky., 563 S.W.2d 716, 717 (1978):

"Where an order is by its very nature interlocutory, even the inclusion of the

---

**1.** As to information in the articles attributed directly to the former director of the Institute, the statutory privilege against disclosure of the

source of the information has been *waived* by publication. *See* Annots., 7 A.L.R.3d 591, 598–600; 99 A.L.R.3d 37, 106–114.

recitals provided for in CR 54.02 will not make it appealable."

Because of the importance of underlying considerations in this case involving the scope of freedom of the press, we granted discretionary review. After considering both the procedural question as to the right to appeal a discovery issue of this nature, and the larger question of the competing interests involved, we affirm.

First, as to the procedural question. The test for determining the appealable character of an order of the trial court is whether "... the order grants or denies the ultimate relief sought in the action or requires further steps to be taken in order that parties' rights may be finally determined." *Evans Elkhorn Coal Co. v. Ousley*, Ky., 388 S.W.2d 130, 130–131 (1965).

In *Claussner Hosiery Co. v. City of Paducah*, 275 Ky. 149, 120 S.W.2d 1039 (1938), we held that the trial court's order granting a subpoena duces tecum requiring the witness to produce the books and records of a corporation was "purely interlocutory" and therefore, not appealable. 120 S.W.2d at 1040. In *Crook v. Schumann*, 292 Ky. 750, 167 S.W.2d 836 (1942), a stockholder's action for mismanagement, we reaffirmed that such an order is "clearly interlocutory and not appealable." 167 S.W.2d at 839.

■ Movant takes the position that it is not necessary for all issues between the parties to be finally resolved before an order may be designated as final for purposes of appeal, relying primarily on *Ratliff v. Fiscal Court of Caldwell County, Kentucky*, Ky., 617 S.W.2d 36 (1981). *Ratliff* was a condemnation case where the condemnee challenged the exercise of the power of eminent domain. We recognize the condemnee's right to appeal an interlocutory judgment granting the condemnor the immediate right of possession even though the issue of damages remained undecided.

The qualitative distinction between a discovery order and an order divesting a property owner of his property should be readily apparent. An order of immediate possession which irreversibly disposes of the use and possession of property is final in character even though there is another issue in the case, compensation for the taking, which remains to be decided. A discovery order is totally dissimilar. As a general proposition to permit appeals from discovery orders would create intolerable delay and unmitigated chaos in the progress of the litigation.

■ But, of course, it is not enough to dispose of the present case on the basis of the rule foreclosing appeal of a discovery order in ordinary circumstances. Discovery is challenged here on the basis that there is a competing public interest of constitutional magnitude, freedom of the press. Although movant has elected to proceed by appeal, the right to seek a writ of prohibition is not abandoned. Assuming the movant could establish that the lower court, although proceeding within its jurisdiction, was acting incorrectly in circumstances where there is no adequate remedy by appeal and great injustice or irreparable injury will result, such a writ would be available. *Shumaker v. Paxton*, Ky., 613 S.W.2d 130 (1981); *Warecke v. Richardson*, Ky., 468 S.W.2d 795 (1971). This case has already been delayed a year and a half by the newspaper's effort to effect a direct appeal of the trial court's discovery order, followed by its petition for discretionary review. In the interest of justice and judicial economy, this case cannot stand a further, similar delay while a writ of prohibition works its way through the appellate process. It is incumbent upon us to go beyond the Court of Appeals' dismissal on procedural grounds and deal with the substantive issues.

There is a striking similarity between this case and *Nazareth Lit. & Ben. Inst., d/b/a SS. Mary & Elizabeth Hospital v. Stephenson*, Ky., 503 S.W.2d 177 (1973). In the *SS. Mary & Elizabeth Hospital* case the issue was whether the hospital was required to respond to a discovery order directed to statements and reports of physician members of its staff rendered in inter-

nal peer review procedures, where the issue was the hospital's alleged negligence in permitting an incompetent physician to practice in the hospital. The hospital argued an overriding public interest "that such reports ... must remain confidential because their revelation would impede the freedom of communication between physicians and hospital authorities concerning proper methods of treatment and the corrections of mistakes." 503 S.W.2d at 178. At the outset of the opinion this court addressed the question whether the hospital should have proceeded by appeal or writ of prohibition. We elected to decide the case on the merits, rather than to dispose of it on procedural grounds, primarily because "the issue is one of positive public interest." The same consideration applies here.

Arguably, the confidentiality of the information in a reporter's notes may be of more, or less, public importance than the confidentiality of a hospital's peer view procedures. But there are a number of cardinal principles set out in the *SS. Mary & Elizabeth Hospital* case which are applicable here without regard to the relative public importance of the two interests. These are:

■ 1) "Claims of privilege are carefully scrutinized, and impediments to the discovery of truth are afforded validity in relatively few instances in the common law." 503 S.W.2d at 179. Since there was "no applicable privilege expressed in either the general law of evidence existing in this state or in the statutes of this state expressing any protection of confidentiality in the situation presented," we decided no "public policy" exists that provides the power to create one. *Id.*

■ 2) "Under CR 26.02, as presently formulated, the expressed policy is that parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." 503 S.W.2d at 179. We stated, "[t]here can be no question in the case before us that the requested material is surely relevant to the subject matter involved in the personal injury suit which asserts liability against the hospital for the alleged incompetent action or omission of the physician who possessed staff privileges." *Id.* In like manner, in the present case there can be no question but that the requested material is "surely relevant." Respondents assert liability on the grounds that the newspaper negligently, or with reckless disregard of the truth, published false and defamatory statements about the respondents. The information in the possession of the newspaper at the time of publication is critical to these issues.

■ The substance of movant's claim is that a privilege exists against disclosure of the information by virtue of freedom of the press as guaranteed by the First Amendment of the United States Constitution and Section 8 of the Kentucky Constitution, and by virtue of the privilege against disclosure of "the source of any information procured or obtained" by the newspaper as set out in KRS 421.100.

The cases interpreting these constitutional and statutory provisions are *Branzburg v. Pound*, Ky., 461 S.W.2d 345 (1971), *Branzburg v. Meigs*, Ky., 503 S.W.2d 748 (1971), and *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), affirming *Branzburg v. Pound*.[2] Both the *Pound* and *Meigs* cases were written by Justice Vance of this Court. In both the *Pound* and *Meigs* cases a newspaper reporter, Branzburg, had refused to disclose information to grand juries (one in Jefferson County and one in Franklin County) regarding violation of statutes concerning use and sale of drugs. We held that "the language of KRS 421.100 granting immunity to a newsman from disclosing the *source of any information* procured or obtained by him, grants a privilege from disclosing the source of the information but does not grant a privilege against disclosing the in-

---

**2.** The Hon. John P. Hayes succeeded the Hon. J. Miles Pound as judge in the trial court, and was substituted as named defendant in the United States Supreme Court.

formation itself." *Pound, supra,* 461 S.W.2d at 347.

Justice Vance stated:

"At the outset we observe that at common law no privilege existed in favor of communications made to newsmen. [Cases cited]

KRS 421.100 which grants a newsman the privilege against disclosing his *source of information* is therefore a statute in derogation of the common law.... [A] privilege which did not exist at common law cannot be asserted under a statute unless it is clear that the statute was intended to grant the privilege." 461 S.W.2d at 347.

The United States Supreme Court granted certiorari in the *Pound* case, and affirmed in a landmark case interpreting First Amendment freedom of the press, *Branzburg v. Hayes, supra.* In an opinion by Mr. Justice White, the United States Supreme Court analyzed the claim that the First Amendment provided a "qualified testimonial privilege to newsmen." Mr. Justice White stated:

"Although the newsmen in these cases do not claim an absolute privilege against official interrogation in all circumstances, they assert that the reporter should not be forced either to appear or to testify before a grand jury or at trial until and unless sufficient grounds are shown for believing that the reporter possesses information relevant to a crime the grand jury is investigating, that the information the reporter has is unavailable from other sources, and that the need for the information is sufficiently compelling to override the claimed invasion of First Amendment interests occasioned by the disclosure." 408 U.S. at 680, 92 S.Ct. at 2656.

The opinion continues:

"It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability.... [O]therwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed.... '[t]he publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.' 408 U.S. at 682–683 [92 S.Ct. at 2657–2658]. [Cases cited].

\*   \*   \*   \*   \*   \*

In 1958, a news gatherer asserted for the first time that the First Amendment exempted confidential information from public disclosure pursuant to a subpoena issued in a civil suit, *Garland v. Torre,* 259 F.2d 545 (CA2), *cert. denied,* 358 US 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958), but the claim was denied, and this argument has been almost uniformly rejected since then.... These courts have applied the presumption against the existence of an asserted testimonial privilege, *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724 [730], 94 L.Ed. 884, 890 (1950), and have concluded that the First Amendment interest asserted by the newsman was outweighed by the general obligation of a citizen to appear before a grand jury or at trial, pursuant to a subpoena, and give what information he possesses. 408 U.S. at 685–686 [92 S.Ct. at 2658–2659].

The court concludes:

"Until now the only testimonial privilege for unofficial witnesses that is rooted in the Federal Constitution is the Fifth Amendment privilege against compelled self-incrimination. We are asked to create another by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do." 408 U.S. at 689–690 [92 S.Ct. at 2661].

In the trial court movant cited a case out of the Tenth Circuit, *Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433 (CCA 10, 1977), as establishing certain "criteria" that must be hurdled before compelling a newsman to disclose information acquired in gathering news in a judicial proceeding. In *Branzburg v. Hayes, supra,* the United States

Supreme Court established no criteria, except, perhaps, that the information sought must be by "relevant and material questions asked during a good-faith ... investigation," 408 U.S. at 708, 92 S.Ct. at 2670. The court specifically stated that the government was not required to demonstrate some "compelling need" for the newsman's testimony.

In *Garland v. Torre, supra,* cited by the United States Supreme Court in the previous quote, Judy Garland sued Columbia Broadcasting System for defamation and sought compulsory disclosure of a journalist's confidential sources of information, a case strikingly similar to the present one. The court refused to recognize a testimonial privilege and required the news media to make disclosure. Nevertheless, the court did discuss certain legitimate considerations that the First Amendment raises in such cases. The opinion states:

> "[W]e are not dealing here with the use of the judicial process to force a wholesale disclosure of a newspaper's confidential sources of news, nor with a case where the identity of the news source is of doubtful relevance or materiality. [Cf. cases cited]. The question asked of the appellant went to the heart of the plaintiff's claim. We hold that the Constitution conferred no right to refuse an answer." 259 F.2d at 549–550.

The court stated:

> "In denying the motion [the trial judge] found that the deposition was 'being taken by plaintiff in good faith and not in such manner as to unreasonably annoy, embarrass or oppress the witness,' and further that it was 'a necessary step in the due and proper preparation for trial.'
>
> ... While it is possible that the plaintiff could have learned the identity of the informant by further discovery proceedings directed to CBS, her reasonable efforts in that direction had met with singular lack of success.... [w]e cannot say that the claim is patently frivolous. The information sought was of obvious materiality and relevance. That being so, the eventual outcome of the litigation is not for the appellant nor for this court now to prophesy." 259 F.2d at 551.

It is significant that in the present case the trial court proceeded with due deference to the movant's First Amendment rights. It required various interrogatories and the deposition of the Institute's director before proceeding further. The information thus provided was far short of the respondents' legitimate discovery needs, and, as a practical matter, the reasonable place to look for the answers as to what information was in possession of the newspaper at the time the articles were written was in the material from which these articles were written. The trial court has fashioned a protective order suitable to the circumstances. We take the same position as taken by Mr. Justice White in *Branzburg v. Hayes, supra,* that we, as an appellate court, should not interpose rules, standards or criteria as preconditions to requiring disclosure of information in a libel case. As Mr. Justice White stated:

> "We are unwilling to embark the judiciary on a long and difficult journey to such an uncertain destination. The administration of a constitutional newsman's privilege would present practical and conceptual difficulties of a high order....
>
> In each instance where a reporter is subpoenaed to testify, the courts would also be embroiled in preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporter's appearance...." 408 U.S. at 703–705, 92 S.Ct. at 2668–2669.

In the end, each case must be decided by the trial court weighing the competing interests of a litigant's right to disclosure with due regard for the importance of freedom of the press. While a fishing expedition will not be tolerated, and the limited statutory privilege in KRS 421.100 must be observed, a litigant's legitimate interest in discovery of information relevant and material to the issues must be respected.

The trial court acted properly in the circumstances. We affirm both the Opinion

and Order of the Court of Appeals dismissing the appeal on procedural grounds, and the substantive validity of the trial court's discovery order as proper in the circumstances and properly circumscribed.

AKER, GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., files a dissenting opinion in which STEPHENSON, J. joins.

STEPHENS, C.J., not sitting.

VANCE, Justice, dissenting.

I dissent from all of the opinion which goes beyond holding that the Court of Appeals properly dismissed the appeal because the order appealed from was not a final order. The discipline which I believe we should impose upon ourselves would not permit us to affirm the dismissal of an appeal by the Court of Appeals, and then proceed to review the merits of the issues raised in the appeal which had been dismissed.

Since the majority has affirmed the dismissal of the appeal by the Court of Appeals, it is my view that all of the discussion of the merits of the First Amendment issues raised are not necessary to the holding and are, therefore, purely dictum.

We have no information as to any specific question which may be propounded to a reporter or any specific document or type of information which the reporter may want to exempt from discovery, nor any information as to the relevance of specific questions or information. The majority approves the order of the trial court. The newspaper or the reporters may yet request deletion of some of the material requested, and the trial court will hold a hearing and rule upon the specific request and enter an order thereon. Essentially, this leaves the case exactly where it was before the appeal was taken and dismissed, except that we have, by dicta, issued an advisory opinion to the trial judge that when and if the newspaper or its reporters request a deletion or exemption of any of the specific items of material sought to be discovered, he should give no consideration to any claim of First Amendment protection. In my view, an advisory opinion of this nature should not be given by this court until the matter is squarely before us by way of a valid appeal, not one which has been properly dismissed.

STEPHENSON, J., joins in this dissent.