RENDERED: DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0521-MR

WKYT-TV AND GRAY MEDIA
GROUP, INC.                                                       APPELLANTS

v.          APPEAL FROM POWELL CIRCUIT COURT
            HONORABLE LISA HAYDEN WHISMAN, JUDGE
            ACTION NO. 23-CR-00122

COMMONWEALTH OF KENTUCKY                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

GOODWINE, JUDGE: WKYT-TV ("WKYT") appeals from an interlocutory

order of the Powell Circuit Court granting the Commonwealth's motion to compel

the production of a complete, unedited interview with a criminal defendant, Devin

Hall ("Hall"). We affirm.

On April 9, 2023, Hall was arrested and charged with the murder of

Jason Smith in Powell County. On April 10, 2023, a WKYT reporter interviewed

Hall inside the Powell County Detention Center.  The same day, WKYT aired edited portions of the interview with Hall in which he admitted that he "stabbed [Smith] once" and that he "just snapped."  Record at 82.  The complete, unedited video was not aired.

A detective investigating Hall's involvement in the crimes requested that WKYT provide a copy of the complete interview.  On April 17, the detective served WKYT with a subpoena for the unedited video.  Counsel for WKYT sent a letter to the Commonwealth's Attorney for the 39th Judicial Circuit objecting to the subpoena under Kentucky law and the First Amendment to the United States Constitution.  WKYT did not produce the unedited video to law enforcement.

On May 22, 2023, a grand jury indicted Hall on murder and nine other charges stemming from the incident.

On February 23, 2024, the Commonwealth moved to compel production of the unedited video.  In response, WKYT moved to quash the subpoena.  Hall's attorney objected to the motion to compel for the record.  On March 25, 2024, the circuit court granted the Commonwealth's motion to compel, finding that no constitutional privilege, statutory privilege, or public policy

shielded the unedited video from disclosure. The circuit court gave WKYT 30 days to respond to the subpoena. This appeal followed.[1]

On appeal, WKYT argues the circuit court erred in granting the Commonwealth's motion to compel production of the unedited video because (1) the First Amendment reporter's privilege applies in this case; (2) Kentucky's shield law codified in KRS 421.100 protects WKYT's unpublished newsgathering materials from being disclosed; (3) the Commonwealth's mere speculation that the unpublished video footage might contain relevant evidence is not sufficient grounds for subpoenaing the information under the *Nixon* test; and (4) public policy disfavors disclosure of the unedited video.

"We review a trial judge's decision concerning discovery issues under an abuse of discretion standard." *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

First, we address whether the First Amendment protects news reporters from being subpoenaed to testify or submit to a subpoena *duces tecum* in

---

[1] WKYT filed its notice of appeal on April 15, 2024. On March 23, 2024, it filed a Motion for Interlocutory Relief or Stay Under Rule of Appellate Procedure ("RAP") 21, requesting this Court stay the circuit court's order requiring WKYT to respond to the subpoena within 30 days. The Commonwealth responded but did not object. This Court granted WKYT's motion to stay the order pending the final resolution of the appeal.

criminal proceedings. In *Branzburg v. Hayes*, 408 U.S. 665 (1972), affirming

*Branzburg v. Pound*, 461 S.W.2d 345 (Ky. 1970), *as modified on denial of reh'g*

(Jan. 22, 1971), the Supreme Court of the United States considered whether

reporters are obligated "to respond to grand jury subpoenas as other citizens do and

to answer questions relevant to an investigation into the commission of [a] crime."

*Branzburg*, 408 U.S. at 682. Though "[c]itizens generally are not constitutionally

immune from grand jury subpoenas," reporters argued they should be "exempt

from these obligations because if forced to respond to subpoenas and identify their

sources or disclose other confidences, their informants will refuse or be reluctant to

furnish newsworthy information in the future." *Id.* The Supreme Court disagreed:

> The preference for anonymity of those confidential
> informants involved in actual criminal conduct is
> presumably a product of their desire to escape criminal
> prosecution, and this preference, while understandable, is
> hardly deserving of constitutional protection. It would be
> frivolous to assert – and no one does in these cases – that
> the First Amendment, in the interest of securing news or
> otherwise, confers a license on either the reporter or his
> news sources to violate valid criminal laws. . . . The
> Amendment does not reach so far as to override the
> interest of the public in ensuring that neither reporter nor
> source is invading the rights of other citizens through
> reprehensible conduct forbidden to all other persons.

*Id.* at 691-92. The Supreme Court held that the First Amendment does not protect

a reporter's "agreement to conceal the criminal conduct of his source, or evidence

thereof, on the theory that it is better to write about crime than to do something

-4-

about it." *Id.* at 692. This Court rejects WKYT's argument that *Branzburg* is too narrow to apply to this case.

Second, WKYT argues that Kentucky's shield law, codified in KRS 421.100, protects WKYT's unpublished newsgathering materials from being disclosed. Though the United States Supreme Court does not recognize a First Amendment reporter's privilege from revealing information, some states, including Kentucky, recognize a qualified privilege. KRS 421.100 provides:

> No person shall be compelled to disclose in any legal proceeding or trial before any court, or before any grand or petit jury, or before the presiding officer of any tribunal, or his agent or agents, or before the General Assembly, or any committee thereof, or before any city or county legislative body, or any committee thereof, or elsewhere, the source of any information procured or obtained by him, and published in a newspaper or by a radio or television broadcasting station by which he is engaged or employed, or with which he is connected.

In *The Lexington Herald-Leader Co. v. Beard*, 690 S.W.2d 374 (Ky. 1984), the Supreme Court of Kentucky addressed whether a newspaper was required to respond to a subpoena *duces tecum* in a case where a newspaper was accused of publishing defamatory articles. The Supreme Court reaffirmed its holding that "the language of KRS 421.100 granting immunity to a newsman from disclosing the *source of any information* procured or obtained by him, grants a privilege from disclosing the source of the information but does not grant a privilege against disclosing the information[.]" *Id.* at 377-78 (quoting *Pound*, 461

-5-

S.W.2d at 347). "While a fishing expedition will not be tolerated, and the limited statutory privilege in KRS 421.100 must be observed, a litigant's legitimate interest in discovery of information relevant and material to the issues must be respected." *Id.* at 379.

There is no Kentucky case addressing the exact factual scenario in this case. Though merely persuasive, the Fifth Circuit Court of Appeals encountered this scenario in *United States v. Smith*, 135 F.3d 963, 966 (5th Cir. 1998). The Fifth Circuit considered whether "journalists deserve a qualified privilege in their nonconfidential work product, so as to protect the media as an institution." *Id.* at 969. The Court, relying on *Branzburg v. Hayes*, reasoned:

> It is not the "rights" of the informant that are here at issue. Rather it is the rights of the newsmen. So it is that the press argues here that there is an interview effect in terrorem, a chilling. Relatedly, the press argues that the burdens will grow if this discovery is ordered because it will make the press an arm of the prosecution. Yet there is little reason to fear that on-the-record sources will avoid the press simply because the media might turn over nonconfidential statements to the government. Presumably, on-the-record sources expect beforehand that the government, along with the rest of the public, will view their nonconfidential statements when they are aired by the media. WDSU-TV's fears that nonconfidential sources will shy away from the media because of its unholy alliance with the government are speculative at best.

*Id.* at 970. Thus, the Fifth Circuit concluded, "that newsreporters enjoy no qualified privilege not to disclose nonconfidential information in criminal cases." *Id.* at 972.

In this case, the qualified immunity provided by KRS 421.100 is inapplicable as the source of the information was not anonymous, and the holding in the *Smith* case supports the circuit court's order. Based on our review of the record, Hall consented to an interview with a WKYT reporter. He was clearly identified in the aired portion of the video in which he confessed to killing the victim. However, Hall is not participating in this appeal. Furthermore, the Commonwealth is not on a fishing expedition, as WKYT argues, and has a legitimate interest in the information in the complete, unaired video because it clearly contains a confession about the murder charge and might include other relevant information about the other charged crimes. Thus, as WKYT does not enjoy any privilege against disclosing the complete, unaired video interview with Hall, the circuit court did not abuse its discretion in ordering WKYT to disclose it to the Commonwealth.

Having found that Kentucky law requires WKYT to produce the complete unaired video footage, we will briefly address WKYT's remaining arguments. WKYT argues that the Commonwealth's mere speculation that the complete, unaired video might contain relevant information is not sufficient

grounds for subpoenaing the information under the "four-part [*Nixon*] test for determining when a movant is entitled to the production of subpoenaed materials prior to trial[.]" *Commonwealth v. House*, 295 S.W.3d 825, 828 (Ky. 2009); *United States v. Nixon*, 418 U.S. 683 (1974). The Commonwealth asserts that this argument is unpreserved for our review. We agree and decline to address this argument further.

Finally, WKYT argues that public policy disfavors disclosure of the unedited video. Given our analysis, public policy clearly favors disclosure of the original video. *See Branzburg*, 408 U.S. at 696.

For the foregoing reasons, we affirm the Powell Circuit Court compelling WKYT to produce the entire unedited video interview with Hall.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

James R. Tanner Hesterberg
Pikeville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Elizabeth Hedges
Assistant Solicitor General
Frankfort, Kentucky

ORAL ARGUMENT:

John Heyburn
Matthew Kuhn
Frankfort, Kentucky