**TRI–CITY TURF CLUB, INC.,**
Appellant,

v.

**PUBLIC PROTECTION AND REGULA-
TION CABINET; Kentucky State Rac-
ing Commission; Kentucky Harness
Racing Commission; Dade Park Jockey
Club, Inc., dba Ellis Park; and Horse-
men's Benevolent Protective Associa-
tion, Inc., Appellees.**

No. 89–CA–975–MR.

Court of Appeals of Kentucky.

Jan. 11, 1991.

Discretionary Review Denied
by Supreme Court May 1, 1991.

Sheila R. Nunley, Gross C. Lindsay,
Trimble, Lindsay & Crafton, Henderson,
for appellant.

Sheryl G. Synder, Mary E. Barrazotto,
Wyatt, Tarrant & Combs, Louisville, for
appellees Public Protection and Regulation
Cabinet, Kentucky State Racing Com'n and
Kentucky Harness Racing Com'n.

David H. Thomason, Ronald G. Sheffer,
Sheffer, Hoffman & Thomason, Henderson,
for appellee Dade Park Jockey Club, Inc.

Don S. Sturgill, Douglas L. McSwain,
Ogden, Sturgill & Welch, Lexington, for
appellee Horsemen's Benevolent Protective
Ass'n, Inc.

Before EMBERTON, HOWARD and REYNOLDS [1], JJ.

REYNOLDS, Judge.

This is an appeal from a judgment of the Franklin Circuit Court which sustained the appellees' motion for summary judgment and dismissed appellant's complaint challenging the constitutionality of various statutory provisions which regulate intertrack wagering and the simulcasting of horse races.

On September 6, 1988, appellant, Tri–City Turf Club, Inc., d/b/a Riverside Downs, which operates a quarter horse racetrack in Henderson, Kentucky, brought this action in the Franklin Circuit Court challenging the constitutionality of various parts of Chapter 376 of the 1988 Kentucky Acts, now codified as KRS 230.376 to 230.-379. This chapter relates to horse racing and specifically to the intertrack wagering and simulcasting aspects of horse racing. Appellant questions the sections of the legislation which are now contained in three of the sections (2, 3, and 4) of KRS 230.377. It stated that the statutory provisions (hereinafter set forth) created artificial and arbitrary classifications among counties in Kentucky with a population of 150,000 or more and which have more than one racetrack and those counties containing less than 150,000 people and also having more than one track. Appellant argued that such classifications and distinctions were unconstitutional because: (1) they constituted special legislation in violation of Sections 59 and 60 of the Kentucky Constitution; (2) they denied appellant equal protection of the law in violation of Section 3 of the Kentucky Constitution and the Fourteenth Amendment to the United States Constitution; and (3) they created a monopoly for the neighboring Henderson County track Ellis Park in violation of Section 198 of the Kentucky Constitution. The complaint filed by Tri–City originally named as defendants the Public Protection and Regulation Cabinet, the Kentucky State Racing Commission, and the Kentucky Harness Racing Commission, all of which were agencies or boards charged with regulating horse racetracks and racing operations in Kentucky. Appellees, Dade Park Jockey Club, Inc., d/b/a Ellis Park and the Horsemen's Benevolent Protective Association, Inc., intervened as defendants herein.

The court overruled appellant's motion for summary judgment and instead granted appellees' motion for summary judgment and dismissed appellant's complaint and the constitutional challenge to the statute. This appeal follows.

■■■■ Appellant again contends that sections 2, 3, and 4 of KRS 230.377 are unconstitutional under sections 3, 59, 60, and 198 of the Kentucky Constitution and under the Fourteenth Amendment to the United States Constitution.

The relevant sections 2, 3, and 4 of KRS 230.377, as they were originally enacted by the Kentucky Legislature in 1988, provided as follows:

230.377. Agreements between tracks for simulcasting and intertrack wagering—Necessary approvals in certain counties—Administrative regulations—

.    .    .    .    .

(2) In a county with a population of one hundred fifty thousand (150,000) or more people and containing more than one (1) track, receipt of simulcasting and participation in intertrack wagering as a receiving track on the same days on which racing is conducted in the county is prohibited unless the track conducting racing agrees in writing to such simulcasting.

(3) In a county with a population of less than one hundred fifty thousand (150,000) people and containing more than one (1) track, the track which conducts racing of the same breed as a host track shall have an exclusive right of first refusal for the simulcasts of such races. If the track conducting racing of the same breed does not receive the simulcasts, the other track in the county may do so and all tracks may receive the simulcasts

---

1. This opinion was prepared and concurred in prior to J. Reynolds' departure from this Court to accept election to the Kentucky Supreme Court effective January 7, 1991.

if agreed to in writing by the tracks affected.

(4) In a county with a population of one hundred fifty thousand (150,000) or more people and containing more than one (1) track, the track which conducts racing of the same breed as a host track shall approve in writing the simulcasting of racing of that breed before another track in the same county may simulcast such races. All tracks may receive the simulcasts if agreed to in writing by the tracks affected.

Appellant asserts that the provisions unconstitutionally distinguish between the only county (Henderson) in the state with a population less than 150,000 and containing two racetracks and the two counties (Jefferson, Fayette) with populations of 150,000 or more and two tracks. We note that under the statutory provisions a track in the large population areas of Fayette or Jefferson is forbidden without proper permission to receive simulcasting and off-track wagering while the other track within the county is conducting racing as opposed to a track in a smaller population area which is allowed to receive simulcasting and intertrack wagering while the other track is operating a race meet without requesting such permission. Appellant argues this would create a situation in Henderson County where Ellis Park is authorized to simulcast races and allow intertrack wagering during the racing dates of Riverside Downs' meeting without the prior approval of appellant. As such, Tri–City claims the legislation is unconstitutional and casts a definite detrimental economic effect upon it.

After the filing of this appeal, the Kentucky Legislature at its regular 1990 session amended provisions of KRS 230.377 so as to delete sections (2) and (4) from the statute. Thus, this statute no longer allows a track conducting racing in a county with a population of 150,000 or more to prohibit a nonracing track in the same county from participating in simulcasting and conducting intertrack wagering on the same days on which the racing is conducted.

Section (3) of KRS 230.377 was retained by the legislature and is identified as now being section (5) of the statute aforesaid and continues to read as follows:

(5) In a county with a population of less than one hundred fifty thousand (150,000) people and containing more than one (1) track, the track which conducts racing of the same breed as a host track shall have an exclusive right of first refusal for the simulcasts of such races. If the track conducting racing of the same breed does not receive the simulcasts, the other track in the county may do so and all tracks may receive the simulcasts if agreed to in writing by the tracks affected.

While there is no longer a specific distinction made between a county with a population of 150,000 or more people and as contrasted with a county with a population of less than 150,000, it is clear that section (3) (now section [5]) affects the two tracks in Henderson County at the present time insofar as the only county in Kentucky containing two tracks and having a population of less than 150,000 is Henderson County. This county has a harness racing/quarter horse racing track (Riverside Downs), the appellant herein, and a thoroughbred racing track (Ellis Park/Dade Park Jockey Club, Inc.). The act provides a different provision, an exclusive right of first refusal for simulcasting, than is imposed on other tracks located in Kentucky.

The house bill which enacted this legislation has provided no justification for treating Henderson County differently than any other county in the state and the court is unable to discern a reasonable basis for Henderson County's classification. Section 59, Twenty-ninth, of the Kentucky Constitution provides that the General Assembly shall not pass special or local acts in a case where a general law can be made applicable. Section 60 of the Kentucky Constitution further provides that the General Assembly shall not indirectly enact a special/local act exempting from the operation of a general act, any county.

Local or special legislation was defined in *Board of Education of Jefferson County*

*v. Board of Education of Louisville*, Ky., 472 S.W.2d 496 (1971), and is as follows:

A local act is one confined to territorial limits, other than that of a whole state or is applicable to some political subdivision and not to others. A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others.

Local law has by definition been described in the case of *Gray v. Taylor*, 227 U.S. 51, 33 S.Ct. 199, 57 L.Ed. 413 (1913), as being "a law that in fact, if not in form, is directed only to a specific spot...."

Although classifications according to population are allowable, where the subject is one of general application throughout the state and has been so treated in the general scheme of legislation, distinctions favorable or unfavorable to particular localities resting alone upon numbers and density of population would be violative of Section 59 and Section 60 of the Kentucky Constitution. *See, Miles v. Shauntee*, Ky., 664 S.W.2d 512 (1984).

A review of the legislation discloses no legislative history concerning intertrack wagering in Kentucky. The title of the statute does not reflect a substantial justification for the distinction which affects Henderson County alone. Section (3) of KRS 230.377 (now section [5]), is determined to be unconstitutional.

KRS 446.090 governs the severability of legislation and provides:

Severability.—It shall be considered that it is the intent of the general assembly, in enacting any statute, that if any part of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or unless the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the general assembly would not have enacted the remaining parts without the unconstitutional part, or unless the remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the intent of the general assembly.

We find that what is left after the severance is fully operable as law as the act does not contain a provision regarding severability. The remaining portions of the statute are not essentially and inseparably connected with the unconstitutional part. There is no indication at all that the legislation would not have been passed absent this provision aforesaid nor is there any factor in this record to overcome the presumption of severability. *City of Louisville v. Miller*, Ky.App., 697 S.W.2d 164 (1985). While holding one section of the act unconstitutional, we recognize that the legislature essentially intended to authorize simulcasting by its enactment of KRS 230.-376–379. This is reinforced by the 1990 legislative amendment to KRS 230.377 which deleted sections (2) and (4) of the 1988 act. The act remains enforceable to the extent that it authorizes simulcasting and places its regulation and administration under the jurisdiction of the appropriate state racing commission. *See,* KRS 230.377(1), (6).

The judgment of Franklin Circuit Court is reversed.

All concur.