DEMOCRATIC PARTY OF
KENTUCKY, Movant,

v.

William L. GRAHAM, Franklin
Circuit Judge, Respondent,

and

A.B. Chandler, III, In His Official Capacity as Attorney General of the Commonwealth of Kentucky; Commonwealth of Kentucky; and Kentucky Registry of Election Finance, Real Parties in Interest,

and

Forgy/Handy Campaign Committee,
Amicus Curiae.

and

GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL UNION NO. 89; and Lon E. Fields, Sr., Movants,

v.

William L. GRAHAM, Judge, Franklin
Circuit Court, Respondent,

and

A.B. Chandler, III, In His Official Capacity as Attorney General of the Commonwealth of Kentucky; and Kentucky Registry of Election Finance, Real Parties in Interest,

and

Forgy/Handy Campaign Committee,
Amicus Curiae.

Nos. 98–SC–685–D, 98–SC–688–TG, 98–SC–687–D and 98–SC–689–TG.

Supreme Court of Kentucky.

Sept. 18, 1998.

As Modified Oct. 15, 1998.

Sheryl G. Snyder, Brown, Todd & Heyburn, PLLC, Louisville, Richard M. Sullivan, Conliffe, Sandmann & Sullivan, Louisville, for Democratic Party of Kentucky.

Scott Coleman Cox, Louisville, for General Drivers, Warehousemen and Helpers Local Union No. 89 and Lon E. Fields, Sr.

Julius Rather, Lexington, for Judge William L. Graham.

A.B. Chandler, III, Atty. Gen., Frankfort, Joseph Gutmann, Asst. Commonwealth's Atty., Louisville, William Bryan Jones, Office of the Attorney General, Karen M. Timmel, Asst. Atty. Gen., Special Prosecutions Division, Scott White, Asst. Atty. Gen., Office of the Attorney General, Frankfort, for A.B. Chandler, III/Commonwealth of Kentucky.

Jon L. Fleischaker, Cheryl R. Winn, Dinsmore & Shohl, LLP, Louisville, for Kentucky Registry of Election Finance.

Lawrence E. Forgy, Jr., Lexington, Thomas V. Handy, London, Mark Stephen Pitt, Wyatt, Tarrant & Combs, Louisville, for Forgy/Handy Campaign Committee.

COOPER, Justice.

We are called upon in this action to determine not whether the petitioners will be or should be indicted by a special grand jury empaneled by the Franklin Circuit Court, but only the narrow legal issue of whether a grand jury can return an indictment for a violation of a campaign finance law, KRS Chapter 121, absent a preliminary finding of probable cause by the Registry of Election Finance (Registry). Respondent William L. Graham, regular judge of the Franklin Circuit Court, has determined that the special grand jury can do just that. In these consolidated actions, the petitioners seek the issuance of a writ of mandamus ordering Judge Graham to prohibit the special grand jury from returning any such indictments until and unless the Registry determines that there is probable cause to believe that a violation of a campaign finance law has occurred.

## I. FACTS.

In 1995, the Democratic slate won the Kentucky gubernatorial election by a margin of 21,560 out of 980,014 total votes cast. Shortly thereafter, the Republican Party of Kentucky filed a sworn complaint with the Registry alleging that the Democratic Party violated the campaign finance laws during that election campaign. KRS 121.140(1). The Democratic Party countered with a complaint alleging similar violations on the part of the Republican Party. The Kentucky State Police (KSP) was already conducting its own investigation into allegations of election law violations. In April 1996, the Attorney General, at the request of the Governor, KRS 15.200, assumed control of the KSP's investigation. On April 10, 1996, the Attorney General and the chairman of the Registry entered into a "Joint Investigation Agreement" establishing a joint task force to coordinate their investigations. Paragraph 1 of that agreement provides as follows:

The Task Force will be operated jointly by the Office of the Attorney General and the Kentucky Registry of Election Finance. All matters in which there is deemed to be only a civil violation of the campaign finance laws will be referred to the Kentucky Registry of Election Finance. All matters in which the Kentucky Registry of Election Finance determines that there is probable cause to believe that a campaign finance statute has been knowingly committed (sic) will be referred to the Office of the Attorney General or the appropriate prosecutor.

In a letter to the Attorney General dated November 7, 1996, the chairman of the Registry expressed his opinion that the Attorney General could not seek an indictment on a campaign finance matter without first referring the matter to the Registry for a probable cause determination. On April 14, 1997, pursuant to a motion and affidavit filed by the Attorney General's office, Judge Graham entered an order empaneling a special grand jury to hear evidence concerning allegations of criminal conduct with respect to the 1995 gubernatorial election. KRS 29A.220. The motion specifically identified certain persons

and organizations as targets of that investigation, including the Democratic Party of Kentucky and the Teamsters Union, *i.e.,* General Drivers, Warehousemen and Helpers Local Union No. 89, who are petitioners in this action. Local 89 immediately filed suit in the Franklin Circuit Court seeking to enjoin the Attorney General from presenting evidence to the special grand jury on the same grounds which they assert in this petition. That action was dismissed on a finding that there was no justiciable controversy in the absence of some evidence that the grand jury intended to return an indictment prior to a probable cause determination by the Registry. The dismissal was affirmed by the Court of Appeals. *General Drivers, Warehouseman & Helpers Local Union No. 89 v. Chandler,* Ky.App., 968 S.W.2d 680 (1998).

On May 18, 1998, at the request of the special grand jury and pursuant to RCr 5.24(1), Judge Graham entered an order granting disclosure to the Registry of all evidence presented to the grand jury and ordering the grand jury to remain in session pending receipt of an opinion from the Registry. On July 27, 1998, both the Attorney General and the Registry requested permission to publicly disclose all of the evidence heard by the grand jury. The Registry is of the opinion that its hearings must be open to the public; and, therefore, its proposed probable cause hearing with respect to the 1995 gubernatorial election would require public disclosure of the grand jury evidence. Judge Graham denied the disclosure requests, rescinded his May 18, 1998 order, and instructed the grand jury to proceed with its deliberations and the performance of its duties, *i.e.,* return either an indictment or a finding of "no true bill ." That order was reduced to writing and entered on July 29, 1998. Local 89 filed its petition in the Court of Appeals on August 8, 1998, and the Democratic Party filed its petition on August 13. On August 19, the Court of Appeals entered an order recommending transfer, and we granted transfer that same day. CR 74.02(5).

## II. JUSTICIABLE CONTROVERSY.

The preliminary issue is the same one resolved adversely to Local 89 by the Court of Appeals in *General Drivers, Warehouseman & Helpers Local Union No. 89 v. Chandler, supra, viz:* Do the petitioners presently have standing to raise the issues addressed in their petitions, or, put another way, is there a present justiciable controversy?

The gist of the petitioners' claim in this regard is that the Attorney General and the grand jury are acting without jurisdiction. Thus viewed, the argument is analogous to that raised in *Goodwin v.. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557 (1948), in which the plaintiff brought an action to enjoin a threatened prosecution for violation of zoning laws. Therein, we stated:

> The concept of the term jurisdiction embraces action, or contemplated action, by the body without power and in the given case, it is necessary for the judiciary to restrain the agency in order to prevent irreparable injury.

*Id.,* 215 S.W.2d at 559.

That, of course, raises the question of whether the return of an indictment would constitute irreparable injury *per se.* Petitioners assert that irreparable injury need not be proven if the challenged statute infringes on First Amendment free speech rights. *See Colorado Republican Federal Campaign Committee v. Federal Election Commission,* 518 U.S. 604, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). However, petitioners are not *challenging* the provisions of KRS Chapter 121 in this action, but are *relying* on those provisions to support their claim for relief. Nor are we persuaded that the notoriety and embarrassment which might accompany the return of an indictment constitutes irreparable injury. *Cf. Jones v. Hogg,* Ky., 639 S.W.2d 543 (1982). Petitioner Fields posits that the mere return of an indictment against him would result in his automatic removal from office as president of Local 89. For this proposition, he cites the Consent Decree entered in the United States District Court for the Southern District of New York in the case of *United States of America v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 88 CIV. 4486(DNE). A perusal of that Decree reveals no language which could be interpreted as providing for

an automatic removal from office upon the mere return of an indictment.

Nevertheless, because of the importance of the issue raised in this action and the certainty of its recurrence, especially if indictments are returned against any of these petitioners, we choose not to decide this case on the basis of whether the return of an indictment would result in irreparable harm, but to proceed instead to the merits.

### III. THE GRAND JURY.

The grand jury system originated in England with the issuance of the Assize of Clarendon by King Henry II in 1166. When the Magna Charta was signed in 1215, it did not specifically mention the grand jury; but, as interpreted by English legal philosopher Edward Coke, it did establish the right to the preservation of life, liberty and property subject to the "law of the land," which we now more commonly refer to as due process of law. 2 E. Coke, *Institutes of the Laws of England* 45 (William S. Hein Co.1986 reprint). Blackstone interpreted Coke's due process requirement as mandating that a person not be deprived of (at least) life without first an indictment by a grand jury, then a separate guilt determination by a petit jury. 4 W. Blackstone, *Commentaries on the Laws of England* 343 (University of Chicago Press 1979 facsimile). The first grand jury was empaneled in colonial America in 1635. Its early independence from governmental influence was exemplified by the case of John Peter Zenger, a newspaper publisher, who criticized the king's withdrawal of jury trials in New York. Three successive grand juries refused to indict Zenger for seditious libel and criticized the monarchy for attempting to indict other criminal suspects by information. Kadish, *Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process*, 24 Fla.St.U.L.Rev. 1, 11 (1996). Although neither the United States Constitution nor the Judiciary Act of 1789 established grand juries, the Fifth Amendment to the Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury . . . ." This requirement has defined the role of the grand jury primarily as the protector of the accused, rather than as the accuser.

Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). The hallmark of the grand jury is its independence from outside influence.

There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory. Despite its broad power to institute criminal proceedings the grand jury grew in popular favor with the years. It acquired an independence in England free from control by the Crown or judges. Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. And in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor.

*Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *Rice v. Commonwealth*, Ky., 288 S.W.2d 635, 638 (1956).

Section 248 of the Constitution of Kentucky provides that a grand jury shall consist

of twelve persons, nine of whom concurring may find an indictment. Section 12 provides that "[n]o person, for an indictable offense, shall be proceeded against criminally by information...." An indictable offense is a felony, *Lakes v. Goodloe*, 195 Ky. 240, 242 S.W. 632, 639 (1922), and an indictment is an accusation made in behalf of the people by nine or more grand jurors in proper session. *Nicholas v. Thomas*, Ky., 382 S.W.2d 871 (1964). Thus, the grand jury is an institution of constitutional origin in Kentucky.

It is generally accepted that an indictment represents a finding that there is probable cause to believe that a crime has been committed, *see, e.g., Branzburg v. Hayes*, 408 U.S. 665, 686, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972), *Kuhnle v. Kassulke*, Ky., 489 S.W.2d 833, 835 (1973), *Braden v. Commonwealth*, Ky.App., 600 S.W.2d 466, 468 (1978), although "[n]o law has been enacted and no constitutional amendment has been adopted that requires an indictment to be founded on probable cause." *King v. Venters*, Ky., 595 S.W.2d 714, 714 (1980). Unlike some jurisdictions, a grand jury in Kentucky cannot file a report which reflects on the character of a citizen or public officer unless that report is accompanied by an indictment against that citizen or officer. *Bowling v. Sinnette*, Ky., 666 S.W.2d 743, 745 (1984). This is consistent with the requirement that grand jury proceedings remain secret, RCr 5.24; for one of the reasons for secrecy is to protect witnesses and the good names of innocent persons who are investigated, but not indicted. *Greenwell v. Commonwealth*, Ky., 317 S.W.2d 859, 861 (1958).[1]

### IV. THE REGISTRY.

The Registry of Election Finance was created by the 1966 legislature. 1966 Ky.Acts ch. 216, § 3 [originally compiled as KRS Chapter 123]. Its primary function was to receive and inspect campaign expenditure reports. KRS 123.086 (repealed, 1974 Ky.Acts ch. 130, § 198). Any delinquency in filing statements and reports was to be reported to the Attorney General and the Common-

wealth's attorneys. KRS 123.991 (repealed, 1974 Ky.Acts ch. 130, § 198). The present version of the campaign finance law was substantially enacted as the 1974 Corrupt Practices Act.1974 Ky.Acts ch. 253. This reform legislation gave the Registry supervisory control over all election financing. *Lee v. Commonwealth*, Ky.App., 565 S.W.2d 634, 636 (1978). For the first time, the Registry was authorized to investigate complaints of campaign finance violations and to initiate civil actions for injunctive, declaratory, or other relief to enforce compliance. 1974 Ky. Acts ch. 253, § 2 [now compiled as KRS 121.120(1)(e) ]. Of course, the Registry had no power to initiate criminal proceedings, and was required to notify the Attorney General or the appropriate Commonwealth's attorney if it had reasonable cause to believe that a violation had occurred. 1974 Ky.Acts ch. 253, § 3 [now compiled as KRS 121.140(5)].

■ Petitioners believe that they are being investigated by the special grand jury for an alleged violation of KRS 121.150(1). A "knowing" violation of that statute is a class D felony. KRS 121.990(1). Since a class D felony is an indictable offense, the investigation of these allegations would *prima facie* fall within the traditional function of the grand jury. However, the petitioners interpret the provisions of KRS 121.120(5) and KRS 121.140(5) as precluding any grand jury from returning an indictment for a violation of a campaign finance law until and unless the Registry first determines that there is probable cause to believe that a knowing violation has occurred. If this interpretation were correct, the petitioners would be entitled to two bites of the probable cause apple. Both the Registry and the grand jury would be required to make probable cause determinations before an indictment could be returned. If either failed to find probable cause, there could be no indictment. This theory is not one of first impression.

In *Naegele Outdoor Advertising Co. v. Moulton*, 773 F.2d 692 (6th Cir.1985), *cert. denied*, 475 U.S. 1121, 106 S.Ct. 1639, 90

---

1. While it has long been the public policy of this Commonwealth to keep secret the proceedings of the grand jury, *Bazzell v. Illinois Cent. R. Co.*,

*203 Ky. 626, 262 S.W. 966, 967 (1924), that has not always been the case. See White v. Fox, 4 Ky. (1 Bibb) 369, 370 (1809).*

L.Ed.2d 184 (1986), it was claimed that KRS 121.140 vested the Registry with exclusive jurisdiction to initially investigate alleged unlawful campaign violations, and that local prosecutors and law enforcement agencies were precluded from initiating a criminal investigation until and unless the Registry determined that there was probable cause to believe that a willful violation had occurred. The United States Court of Appeals for the Sixth Circuit found no language in KRS 121.140 vesting the Registry with such exclusive authority and held that the Registry's statutory authority was only supplementary to that of traditional law enforcement agencies. *Id.* at 700.

KRS 121.140(1) authorizes the Registry upon receipt of a sworn complaint to investigate an alleged violation of the campaign finance law. Subsections (2), (3) and (4) of that statute contain provisions for the imposition of civil sanctions by the Registry in the event of a finding that "there is probable cause to believe that the law has been violated." When *Naegele* was decided in 1985, what is now KRS 121.140(5) was compiled as KRS 121.140(3) and read in pertinent part as follows:

> If the registry concludes that there is probable cause to believe that the law has been violated willfully, it may refer such violation to the Attorney General or to the appropriate local prosecutor for investigation and prosecution. The Attorney General or appropriate local prosecutor shall have responsibility for prosecutions under the law and may request from the registry all evidence collected in its investigation.

The statute was amended in 1988 as follows:

> If the registry concludes that there is probable cause to believe that the *campaign finance* law has been violated willfully, it [may] *shall* refer such violation to the Attorney General [or to the appropriate local prosecutor] for [investigation and] prosecution. The Attorney General [or appropriate local prosecutor shall have responsibility for prosecutions under the law] *may request the registry's attorney or the appropriate county or Commonwealth's attorney to prosecute the matter* and may

request from the registry all evidence collected in its investigation. *In the event the Attorney General or the appropriate local prosecutor fails to prosecute in a timely fashion, the registry may petition the Circuit Court to appoint the registry's attorney to prosecute, and upon such motion for good cause shown, the court shall enter an order to that effect.*

1988 Ky.Acts ch. 341, § 42. In 1992, the legislature substituted the culpable mental state of "knowingly" for "willfully," presumably to comply with KRS 501.030(2), and inserted the words "timely filed" before "for good cause shown." 1992 Ky.Acts ch. 288, §§ 30, 46.

Petitioners assert that the 1988 amendment effectively repealed the power of the Attorney General and traditional law enforcement agencies to investigate alleged violations of the campaign finance laws. However, we view those amendments as (1) clarifying that the Registry's probable cause determination relates only to alleged violations of the campaign finance law; (2) removing from the Registry any discretion as to whether to refer a knowing violation to the Attorney General; (3) recognizing that the Attorney General's authority to investigate suspected criminal activity is set forth more specifically in other statutes (more on this, *infra*) and that repetition of that fact in this statute was surplusage; and (4) authorizing the Registry to intervene if it believes that the Attorney General and/or appropriate local prosecutors are either dragging their feet or unwilling to prosecute an alleged criminal violation of a campaign finance law. In *Naegele,* the Sixth Circuit found no intent in the pre–1988 statutory scheme to vest exclusive control in the Registry to the exclusion of traditional law enforcement authorities to investigate campaign finance violations. *Naegele,* 773 F.2d at 700. We find no legislative intent in the subsequent amendments to depart from this interpretation.

Specifically, we do not find the deletion of the words "investigation and" from KRS 121.140(5) to evidence an intent to divest the Attorney General of his duty to investigate violations of penal statutes. In the same

chapter of the legislation which deleted the words "investigate and" from KRS 121.140(5), the legislature enacted KRS 15.242 (1988 Ky.Acts ch. 341, § 1), which provides as follows:

> The Attorney General shall possess jurisdiction, concurrent with that of county and Commonwealth's attorneys, to investigate and prosecute violations of the election laws. The Attorney General, county attorneys, and Commonwealth's attorneys shall notify the Registry of Election Finance of any investigation or prosecution of alleged election law violations.

KRS Chapter 121 is but one of nine chapters included in Title X of the Kentucky Revised Statutes, wherein all election laws are compiled. While the Registry's authority is limited to civil enforcement of violations of KRS Chapter 121, KRS 15.242 clearly vests the Attorney General, county attorneys and Commonwealth's attorneys with authority to investigate and prosecute alleged criminal violations of all election laws, including campaign finance laws, restricted only by the requirement that notice of any such investigation or prosecution be given to the Registry.

> In substantially reenacting a statute, the legislature is well aware of the interpretation of the existing statute and has adopted that interpretation unless the new law contains language to the contrary. *Brown v. Harrodsburg*, Ky., 252 S.W.2d 44 (1952). If the legislators intended to depart from the existing statutory interpretation, it is incumbent that they use "plain and unmistakable language" which leaves no doubt that a departure from the prior interpretation is intended. *Long v. Smith*, 281 Ky. 512, 136 S.W.2d 789 (1940).

*Butler v. Groce*, Ky., 880 S.W.2d 547, 549 (1994). In view of its enactment of KRS 15.242 within the same chapter of the legislation which amended KRS 121.140(5), we cannot conclude that the legislature plainly and unmistakably intended by that legislation to depart from the *Naegele* interpretation of KRS 121 .140.

■ Finally, the petitioners rely on the 1992 enactment of KRS 121.120(5) (1992 Ky. Acts ch. 288, § 44), which reads as follows:

> *All policy and enforcement decisions concerning the regulation of campaign finance shall be the ultimate responsibility of the registry.* No appointed or elected state officeholder or any other person shall, directly or indirectly, attempt to secure or create privileges, exemptions, or advantages for himself or others in derogation of the public interest at large in a manner that seeks to leave any registry member or employee charged with the enforcement of the campaign finance laws no alternative but to comply with the wishes of the officeholder or person. Registry members and employees shall be free of obligation or the appearance of obligation to any interest other than the fair and efficient enforcement of the campaign finance laws and administrative regulations. It shall not be considered a violation of this subsection for an officeholder or other person to seek remedies in a court of law to any policy or enforcement decision he considers to be an abridgement of his legal rights. (Emphasis added.)

■ Petitioners would have us read the first sentence of this statute out of context and interpret it to preclude law enforcement officials from prosecuting a criminal violation of a campaign finance law except upon referral from the Registry. "However, it is well-settled that 'in expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole and to its object and policy.'" *Wathen v.. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997) *quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987); *accord Department of Motor Transp. v. City Bus Co., Inc.*, Ky., 252 S.W.2d 46 (1952); *Henry v. Commonwealth*, 312 Ky. 491, 228 S.W.2d 32 (1950). KRS 121.120(5) is itself a penal statute, the violation of which is also a class D felony. KRS 121.990(18). Its obvious purpose is to criminalize any attempt by a public official or anyone else to influence the Registry with respect to the performance of its statutory duties. Those duties do not include the prosecution of criminal violations, which are specifically assigned to the Attorney General, county attorneys, and Common-

wealth's attorneys by KRS 15.242. Viewing the statute as a whole, we discern no legislative intent to divest traditional law enforcement agencies of their authority to investigate and prosecute alleged criminal violations of the campaign finance laws.

### V. CONCLUSION.

We agree with the Sixth Circuit's interpretation of KRS Chapter 121 as set forth in *Naegele, supra*. While the legislature has empowered the Registry to investigate alleged violations of KRS Chapter 121 and to impose civil sanctions for non-criminal violations, its investigative authority is not exclusive, but is concurrent with and supplementary to that of traditional law enforcement agencies to investigate suspected criminal activity. In fact, it is the Registry's authority, not that of the Attorney General, which is limited by KRS 121.140(5). Once the Registry concludes that there is probable cause to believe that a felony has been committed, its authority to investigate terminates and it is required to refer the matter to the Attorney General.[2] This does not mean that the Attorney General must wait for the Registry to make such a determination before conducting his own investigation and submitting his evidence to a properly constituted grand jury. Presumably, that is why the statute contains a provision permitting the Registry to intervene if it perceives foot-dragging or unwillingness to prosecute on the part of the Attorney General or local prosecutors, but does not contain a similar provision providing relief to prosecuting authorities if they perceive foot-dragging or unwillingness on the part of the Registry to make a probable cause determination. Prosecutors do not need such a provision, because they are not required to defer prosecution while waiting for the Registry to act.

The majority of this Court having concluded that the statutory scheme does not purport to restrict the authority of the grand jury to render an indictment, we find no need to address whether a different statutory scheme might violate the constitutional requirement of separation of powers. *Cf. Commonwealth v. Halsell*, Ky., 934 S.W.2d 552 (1996); *American Trucking Ass'n v. Commonwealth, Transp. Cab.*, Ky., 676 S.W.2d 785, 789 (1984) (if there are two ways to reasonably construe a statute, one upholding its validity and the other rendering it unconstitutional, we must adopt the construction which sustains the constitutionality of the statute).

Accordingly, the petitions for a writ of mandamus are DENIED and the order of August 19, 1998 granting emergency relief is VACATED.

GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion.

STUMBO, J., not sitting.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent and would grant the petitions for writ of prohibition. The first matter at issue is whether the statutory enforcement scheme for criminal violations of the campaign finance laws, set forth in KRS 121.120(5) and 121.140(5), gives the Registry for Election Finance (Registry) exclusive jurisdiction to make a *judicial* determination of probable cause for a felony prosecution. If this question is answerable in the affirmative, the second issue which must be addressed is whether such a scheme violates the United States and Kentucky constitutions.

The majority concludes that the Registry's power to determine probable cause under KRS 121.120(5) and 121.140(5) is non-exclusive and does not restrict the authority of the

---

**2.** The dissenting opinion suggests that a probable cause finding by the Registry would usurp the power of the grand jury to make its own independent determination, or somehow would usurp the power of a district judge to make a probable cause finding at the conclusion of a preliminary hearing held pursuant to RCr 3.14. Of course, a preliminary hearing is held only when the defendant is under arrest for the alleged offense, but not yet indicted. When a case is submitted directly to the grand jury, there is no proceeding under RCr 3.14. *King v. Venters*, Ky., 595 S.W.2d 714 (1980). And, as we have concluded in this majority opinion, the grand jury can proceed with the performance of its constitutional duties whether or not the Registry makes a finding of probable cause.

grand jury to render an indictment. The majority fails, however, to address the General Assembly's invasion of this Court's rule-making power by purportedly removing from the district court the authority to determine probable cause for criminal felony prosecution and removing from the grand jury the power to indict for felonies committed. Neither does the majority find it necessary to address the issue of whether KRS 121.120(5) and 121.140(5) violate the constitutional requirement of separation of governmental powers, *Ky. Const.* §§ 27, 28 and 116, or the due process guarantees of the United States and Kentucky Constitutions, *U.S. Const.* amend. XIV, § 1 and *Ky. Const.* § 2.

For the reasons discussed below, I believe the majority's interpretation, which fails to strike down the General Assembly's attempt to vest an exclusively judicial power in an executive agency, is in error. The General Assembly has created a statutory enforcement scheme that superimposes the Registry over the district court or the grand jury in determining whether criminal campaign finance law violations may be prosecuted. This scheme impermissibly grants a core judicial power to the executive branch of government in violation of the separation of powers doctrine. As a necessary corollary to my disagreement, I believe this statutory scheme clearly violates sections 27, 28, and 116 of the Kentucky Constitution and the due process guarantees of the United States and Kentucky Constitutions, *U.S. Const.* amend. XIV, § 1 and *Ky. Const.* § 2.

Moreover, even if the majority's interpretation were correct, it would still leave in place a statutory enforcement scheme that confers on an executive agency power which is solely judicial in nature. The General Assembly created the campaign finance laws. In turn, it created the process for investigating and prosecuting violations of those laws. And, finally, it created the penalties for such violations. The General Assembly was charged with the knowledge when it amended KRS 121.120(5) and 121.140(5) that, constitutionally, probable cause to prosecute determinations can be decided only by the district courts and that only the grand jury has jurisdiction to indict for felony crimes committed. *Ky. Const.* §§ 12 and 116.[1] The General Assembly nonetheless either tried to remove those constitutional powers from the judiciary, or (as the majority believes) acted to supplement those powers, by vesting them in an executive administrative agency: the Registry. The General Assembly is not constitutionally empowered to enact, by statute, judicial rules limiting the ability of the grand jury to issue indictments or removing from the district court the power to determine probable cause for criminal felony prosecution. Accordingly, the issue of the constitutionality of these statutes *is* properly before us and should be decided.

Therefore, I dissent from the majority's opinion that the Registry and the judiciary share jurisdiction to determine probable cause to criminally prosecute *knowing* campaign finance law violations. I would find that KRS 121.120(5) and 121.140(5) unconstitutionally vest exclusive jurisdiction to determine probable cause in the Registry. I would also hold that the power of the grand jury to indict is unconstitutionally abridged by KRS 121.120(5) and 121.140(5) since that power is contingent upon a probable cause finding being made by the Registry. Further, because the criminal punishments of KRS 121.990 are essentially and inseparably connected to, contingent upon, and thus not

---

**1.** The majority opinion suggests that the power of the Registry to make a probable cause finding does not pose any constitutional issues because a preliminary hearing in district court pursuant to RCr 3.14 can be bypassed by making a direct submission to the grand jury. I believe that the majority fails to address issue of whether it is constitutionally valid to grant the power to Registry to make a probable cause finding. This is a core judicial power.

The issue is not whether a preliminary hearing in district court is the sole means by which an indictment may issue. The question here is whether it is constitutionally permissible for the Registry to be permitted to replace a district court.

While I certainly agree with the majority that whenever possible a statute should be construed in the fashion which renders it constitutional, I cannot find any way to do so in the instant case. There is no way I can reconcile the grant of an express judicial power to an executive branch agency.

severable from this three-step statutory enforcement scheme, the penalties of KRS 121.990, except KRS 121.990(5) (injunctive relief) and KRS 121.990(13) (civil penalties), should be stricken as unconstitutional. I would grant the petitions for writ of prohibition regarding any action of the grand jury based on alleged violations of the campaign finance laws.

## I. STATUTORY ANALYSIS AND LEGISLATIVE HISTORY

The majority maintains that the General Assembly empowered the Registry to share jurisdiction with traditional law enforcement agencies to investigate suspected criminal violations of the campaign finance laws. As noted above, I disagree. KRS 121.120(5), 121.140(5) and 121.990, when read *in pari materia*, purport to vest the Registry with exclusive jurisdiction to make a *judicial* probable cause determination as to whether a *knowing* campaign violation has occurred. This determination is not a common *administrative* probable cause determination analogous to an agency stating its reasonable belief that its statutes or regulations have been violated. *See, e.g.*, KRS 75.130 (fire protection districts-employee discipline); KRS 212.620(1) (local public health programs-abatement of public health nuisance orders); KRS 250.601(3) (Kentucky Agricultural Experiment Station-criminal offenses regarding agricultural seeds, feeding stuffs, and fertilizers); KRS 325.360(1) (Board of Accountancy-accountant discipline); KRS 344.200(2) (Comm'n on Human Rights-civil rights violations); and, KRS 344.610(1) and 344.625(1) (Comm'n on Human Rights-fair housing violations). See also the discussion below regarding rule-making powers. Rather, the probable cause determination contemplated by KRS 121.140(5) was meant by the General Assembly to replace the probable cause to prosecute finding that constitutionally must be made by a judicial officer prior to referring a criminal matter for grand jury investigation. *See Ky Const.* § 116; RCr 3.14. Because the Registry's determination is a prerequisite to grand jury investigation, the statutes in question have the effect of stopping criminal investigations cold unless the Registry makes such a finding.

The issue of whether the Registry is vested with exclusive jurisdiction to determine whether willful (now knowing) campaign finance violations may be criminally prosecuted was first addressed in 1985, in *Naegele Outdoor Advertising Co. v. Moulton*, 773 F.2d 692 (6th Cir.1985). In *Naegele*, the Kentucky State Police investigated, and the Commonwealth Attorney subsequently prosecuted, Naegele for campaign finance violations but did not first obtain from the Registry a probable cause determination of willful campaign finance violations. *Id.* at 693–94.

At that time, KRS 121.140(5) stated: If "the Registry [, after investigating a complaint,] concludes that there is probable cause to believe that the [campaign finance] law has been violated willfully, it may refer such violation to the attorney general or to the appropriate local prosecutor for investigation and prosecution." Naegele construed this provision to require the Registry to notify the subject of a complaint and hold a due process hearing determining probable cause before a willful campaign violation could be referred for prosecution. *Id.* at 694. The trial court agreed. On review, however, the Sixth Circuit Court of Appeals held KRS 121.140(5) did not restrict "the traditional powers of law enforcement," but merely added a specific administrative procedure to be followed by the Registry in investigating its own complaints, allowing for the Registry to turn over a matter for prosecution if it determined that criminal law had been violated. *Id.* at 699.

In an obvious response to *Naegele*, the General Assembly amended the campaign finance law statutes. In 1988, KRS 121.140(5) was amended to strengthen the power of the Registry to prosecute willful campaign violations. It removed from the Attorney General the power to *investigate* campaign finance violations, 1988 Ky.Acts ch. 341, § 42(3), while specifically granting the Attorney General and local prosecutors power to both investigate and enforce violations of *other* elections laws, 1988 Ky.Acts ch. 341, § 1. The general grant of authority to the Attorney General was limited by the specific grant of authority to the Registry. *Cf. Hancock v.*

*Schroering,* Ky., 481 S.W.2d 57 (1972) (noting how the authority of the Attorney General to intervene in a case is limited by the statutory process requiring initiation by the governor.) *See also* the legislative history of 1992 Ky. Acts ch. 288, below. The 1988 amendments also vested power in the Registry's attorney to prosecute willful campaign violations on its own, if after referral to an attorney general (or local prosecutor) for prosecution, prosecution was not undertaken in a timely manner.

In 1992, the General Assembly further strengthened the power of the Registry by setting forth a three-step process in KRS 121.140 for the Registry to follow in enforcing campaign finance law violations: 1) a preliminary complaint investigation resulting in a determination of probable cause that some violation occurred; 2) a required conciliation agreement process for non-knowing violations; and 3) for *knowing* violations, after determination of probable cause, referral for prosecution. 1992 Ky.Acts ch. 288, § 46(1)–(2), (5). The 1992 amendments increased the majority of the criminal penalties for knowing (formerly willful) violations from misdemeanors to Class D felonies and criminalized knowing violations of other parts of the campaign finance law. *See generally* 1992 Ky.Acts ch. 288, § 30, amending KRS 121.990. The General Assembly also empowered the Registry with "ultimate responsibility" for "[a]ll policy and enforcement provisions" and created criminal penalties for those who would attempt to improperly influence the enforcement process. 1992 Ky.Acts ch. 288, § 44(5) (adding KRS 121.120(5)) and § 30(19) (adding KRS 121.990(18)). Moreover, the General Assembly considered and rejected the creation of a special deputy attorney general to prosecute violations of *both* elections and campaign finance laws, thus leaving jurisdiction to criminally enforce the statute squarely in the hands of the Registry.1992 *Leg. Record* Senate Bill 221 Amendments, history of House Floor Amendment 9, p. 64.

Finally, in addition to looking to the language of these statutes and the legislative history of their enactment, it is helpful to look to the Registry's own construction of KRS 121.120(5), 121.140(5) and 121.990 to understand the statutes' meaning. *Beshear v. Kentucky Utilities Co.,* Ky.App., 648 S.W.2d 535, 537 (1982). The Kentucky Registry of Election Finance construes KRS 121.120(5) to preclude the Attorney General and the grand jury from seeking indictments on campaign finance matters without· first referring the matter to the Registry for a probable cause determination. In *General Drivers, Warehouseman & Helpers Local Union No. 89 v. Chandler,* Ky.App, 968 S.W.2d 680 (1998), the Registry, in a letter from its chair to the Attorney General, warned that the General Assembly had created a "specific administrative procedure for enforcement of campaign finance statutes" and that bypassing that procedure could invalidate any later criminal proceedings because the offender would have been "deprived of the opportunity to be heard at the administrative level." *Id.* at 681–82.

To recap, the wording of the statutes, the scheme they set forth, and the legislative history of KRS 121.120(5) and 121.140(5) demonstrate that each time the General Assembly amended the campaign finance laws, it gave greater and greater power to the Registry to determine the course of prosecution for violations of the campaign finance laws. The Registry's own administrative interpretation more accurately agrees that KRS 121.120(5) and KRS 121.140(5) confer exclusive jurisdiction upon the Kentucky Registry of Election Finance to determine whether criminal prosecution of the campaign finance laws will be undertaken. It is beyond cavil that the General Assembly intended to place exclusive control of the enforcement of the campaign finance laws with the Registry. Under these circumstances, I firmly disagree with the majority's statutory interpretation, which has the unwarranted effect of giving jurisdiction both to the Registry and the grand jury.

## II. CONSTITUTIONAL ANALYSIS

Because KRS 121.120(5) and 121.140(5), when read *in pari materia,* give the Registry exclusive jurisdiction to determine whether a *knowing* campaign finance law violation will be criminally prosecuted, the statutory scheme violates the Kentucky Constitution in

four ways: it gives expressly judicial power to an executive branch agency, *Ky. Const.* §§ 27 and 28; it divests the grand jury of its constitutional jurisdiction to indict for felony crimes committed, *Ky. Const.* § 12; it usurps the constitutional power of the Supreme Court of Kentucky to prescribe "rules of practice and procedure for the Court of Justice," *Ky. Const.* § 116; and, it violates the due process guarantees of the United States and Kentucky Constitutions, *U.S. Const.* amend. XIV, § 1 and *Ky. Const.* § 2.

## A. Separation of Powers

Separation of powers is a doctrine which has a very real meaning within the Commonwealth of Kentucky. *Legislative Research Comm'n v.. Brown,* Ky., 664 S.W.2d 907, 911–15 (1984). Each of the three branches of the Commonwealth's tripartite system of government has powers which may not be wielded by the other branches under any circumstances. *Id.;* Sections 27 and 28 *Ky. Const.* Any statute which purportedly violates the separation of powers doctrine is subject to a "strict construction of those time-tested provisions." *Brown,* 664 S.W.2d at 914.

By enacting the statutory scheme of KRS 121.120(5) and 121.140(5), the General Assembly violated the separation of powers doctrine by giving expressly judicial powers to an executive branch agency. Under the legislation in question, the Registry maintains exclusive power to make a probable cause to prosecute finding. The authority to make such a finding, however, is unique to the judicial branch. RCr 3.14. Granting one branch a core power of another is unconstitutional. *Horn v. Commonwealth,* Ky., 916 S.W.2d 173, 176 (1995).

In addition, since the grand jury cannot indict unless the Registry first finds probable cause of a knowing campaign violation, this unconstitutional grant of power violates *Ky. Const.* § 12. It divests the grand jury, which is an arm of the this Court, *Bowling v. Sinnette,* Ky., 666 S.W.2d 743, 745 (1984), of its constitutional jurisdiction to indict for felony crimes committed. *Ky. Const.* § 12. The "ancient role" of the grand jury is to determine whether "there is probable cause

to believe that a crime has been committed and [to protect] citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 U.S. 665, 686, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626, 643 (1972), *aff'g Branzburg v.. Meigs,* Ky., 503 S.W.2d 748 (1971) *and Branzburg v. Pound,* Ky., 461 S.W.2d 345 (1970). A grand jury possesses significant investigative powers and resources: it is an "inquisitorial and accusing body" that exercises extensive opportunities to discover and evaluate relevant facts before it decides whether to issue an indictment. *Matthews v. Pound,* Ky., 403 S.W.2d 7, 9–10 (1966). There is no question that a grand jury is part of the Court of Justice and a session of the grand jury is a proceeding in circuit court. *Bowling v. Sinnette,* Ky., 666 S.W.2d 743, 745 (1984).

If, then, KRS 121.120(5) and 121.140(5) vest exclusive jurisdiction in the Registry to determine whether to prosecute *knowing* criminal violations of campaign finance laws, the grand jury is improperly stripped of its constitutional jurisdiction to indict for felony crimes committed. *Ky. Const.* § 12. Moreover, a finding of *no* probable cause to prosecute by the Registry is not subject to judicial review by any court. KRS 121.140(7) permits review of final Registry action by "any person directly involved or affected" by that action *except for determinations to refer violations for prosecution.* Even if KRS 121.140(7) could be read to permit judicial review of determinations finding no probable cause, who would be the properly affected party to appeal the determination? The Attorney General? The Commonwealth Attorney? Certainly not the alleged violator.

As the Court stated in *Legislative Research Comm'n v. Brown,* Ky., 664 S.W.2d 907, 914 (1984), "[t]he hydraulic pressure inherent within each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted ." *Id.* (*quoting Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983)). I would resist the intrusion urged by KRS 121.120(5) and 121.140(5) and hold the statutory scheme unconstitutional since it

grants a core power of the judiciary to the executive. *Id.*

## B. Invasion of rulemaking power

A second and distinct, but related, issue created by the statutory scheme is the invasion of this Court's authority by the General Assembly in the form of prescription of rules of "practice and procedure" in violation of section 116 of the Kentucky Constitution. The Supreme Court of Kentucky has the sole authority to regulate the "rules of practice and procedure for the Court of Justice." *Ky. Const.* § 116. This Court has repeatedly upheld its exclusive authority to generate such rules. *See, e.g., O'Bryan v. Hedgespeth,* Ky., 892 S.W.2d 571, 576 (1995) (holding that statute mandating admissibility of collateral source payment information in tort actions contravened the rules of evidence and impermissibly encroached on the rulemaking authority of this Court); *Gaines v. Commonwealth,* Ky., 728 S.W.2d 525, 527 (1987) (holding that a statute which permitted "testimony from a child who [had] not been declared by the trial court competent to testify as a witness [was] an unconstitutional infringement on the inherent powers of the judiciary.")

Thus, the General Assembly is not constitutionally empowered to enact, by statute, judicial rules limiting the ability of a grand jury to issue an indictment or removing from the district court the power to determine probable cause for criminal felony prosecution. A determination of probable cause, as contemplated by KRS 121.140(5), in effect adds an element to the various criminal campaign finance offenses not contained in the substantive statutes setting forth those offenses. In order to prosecute a supposed violator, KRS 121.140(5) requires the Registry make a *judicial* determination of probable cause that the violation is *knowing.* As stated above, this is not the typical *administrative* probable cause finding that is akin to an agency stating its reasonable belief that its statutes or regulations have been violated. *See, e.g.,* KRS 344.200(2) (stating that the Commission on Human Rights decides whether there is probable cause to believe civil rights violations has occurred) *and* KRS

324.350 (authorizing the State Board of Accountancy to conduct investigations to determine whether there is probable cause to commence proceedings against anyone violating KRS ch. 325).

Rather, the determination of probable cause contemplated by KRS 121.140(5) either replaces the probable cause determination that must be made by a judicial officer prior to referring a criminal matter to the grand jury for investigation, RCr 3.14, or preempts direct submission to a grand jury. Even where agencies are empowered to determine that probable cause exists to believe a criminal violation of their statutes has occurred, that determination is *not* a prerequisite to grand jury investigation nor does it require a determination of mens rea (*see* section II(C)). Further, it does not replace the function of the district court in determining probable cause for criminal felony prosecution. *See, e .g.,* KRS 250.601(3) (stating that when the Director of the Kentucky Agricultural Experiment Station, in the course of investigating a possible statutory violation, has probable cause to believe a criminal offense has occurred, the Director shall refer it to the county attorney for prosecution). Therefore, KRS 121.120(5) and 121.140(5) unconstitutionally invade this Court's rulemaking authority to govern the practice and procedure of the grand juries and district courts.

This Court has nonetheless allowed a statute impermissibly invading its rulemaking power to stand if the statute comprises a statutorily acceptable substitute for current judicially mandated procedures, *Drumm v. Commonwealth,* Ky., 783 S.W.2d 380, 382 (1990), or if it can be "tolerated in a spirit of comity" because it does not unreasonably interfere with the "orderly functioning of the courts." *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794, 797 (1987). Neither of these exceptions apply because the statutory scheme of KRS 121.120(5) and 121.140(5) goes to the very heart of our system of criminal justice system. Through the passage of KRS 121.120(5) and 121.140(5), the General Assembly generated new rules for the operation of grand juries and district courts, replacing existing rules established by this court. *See* RCr 5.02—.24 (grand

juries) and RCr 3.14 (district courts). Accordingly, I would hold that the General Assembly has impermissibly invaded this Court's rulemaking authority. Moreover, this situation is not one where this Court may waive the requirements of section 116 and extend comity to the General Assembly.

### C. The Scheme Violates KRS 500.070(1) and the Due Process Guarantees of United States and Kentucky Constitutions.

In addition to the problems I have already outlined, there is a final, fatal flaw in the statutory scheme enacted by the General Assembly: it violates the due process guarantees of the United States and Kentucky Constitutions by reducing the burden of proof required of the Commonwealth in a criminal proceeding. KRS 500.070(1) requires the Commonwealth to prove every element of its case beyond a reasonable doubt, including the mental state of the crime. KRS 121.120(5), 121.140(5) and 121.990 set forth "knowing" as the mental state requisite for felony violations of the campaign finance law. These statutes empower the Registry to make the finding of whether a *knowing* violation has occurred.

Thus, this statutory scheme makes it easier for the Commonwealth to meet its burden of proving mens rea beyond a reasonable doubt: it authorizes an administrative agency-the Registry-to make that finding based on a preponderance of the evidence. *See* 9 J. Wigmore, Evidence § 2498 (Chadbourne rev. 1981) & Supp.1996 (Best rev.) (stating "The traditional standard of proof in a civil or administrative proceeding is the preponderance standard.") "[T]he mens rea requirement under a criminal statute," however, "is a question of law, to be determined by the court." *Staples v. U.S.,* 511 U.S. 600, 612 n. 6, 114 S.Ct. 1793, 1800, 128 L.Ed.2d 608, 621 (1994). It cannot be adjudicated by an administrative agency. By empowering the Registry to determine whether a violation is knowing, KRS 121.120(5), 121.140(5) and 121.990 not only violate the procedural protections of KRS 500.070(1), but the due process guarantees of the United States and Kentucky Constitutions. *U.S. Const.* amend.

XIV, § 1; *Ky. Const.* § 2. These statutes allow an accused to be convicted without the Commonwealth proving beyond a reasonable doubt every fact necessary to constitute the crime charged and thus should be stricken as unconstitutional. *In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368, 373–75 (1970).

### III. CONCURRENT OR NON–EXCLUSIVE JURISDICTION IS ALSO UNCONSTITUTIONAL

Even if the majority's interpretation were correct, it still leaves in place a statutory enforcement scheme that confers a power which is solely judicial in nature on an executive agency. The analysis set forth in the introduction and section II(B) of this dissent applies with equal force: the probable cause determination made by the Registry is *not* the common *administrative-type* determination of probable cause reflecting an agency's reasonable belief that its statutes or regulations have been violated. In fact, just the opposite is true: this administrative finding is a *judicial-type* determination comparable to an information. *See* RCr 6.04, 6.10. It sets forth the facts comprising each felony offense, then refers the matter for prosecution. *See* KRS 121.140(5) and 32 *Ky. Admin. Regs* 2:030 § 4, 2:040 §§ 8–9. But prosecution of a felony crime may not be commenced by information; instead, a grand jury indictment is constitutionally required. *Ky. Const.* § 12. Therefore, under the majority's construction, KRS 121 .120(5) and 121.140(5) effectively make the grand jury unnecessary, which the Constitution does not permit. Furthermore, as stated above, the decision of the Registry is not reviewable by any court. KRS 121.140(7). It logically follows that if no court can overturn the Registry's decision, neither can the grand jury. The end result of this dilemma is that the grand jury could be totally dispossessed of its constitutional power to indict for felony crimes committed. Therefore, even under the majority's interpretation, KRS 121.120(5) and 121.140(5) cannot stand.

### IV. SEVERABILITY

Finally, we must determine what portions of the statutes in question are severable so

that the valid portions may be saved and the invalid portions stricken. "It is a fundamental principle that a statute may be valid in one part and invalid in another part, and if the invalid part is severable from the rest, the part which is valid may be sustained." *Burns v. Shepherd,* Ky., 264 S.W.2d 685 (1953) (*citing State Bd. of Election Commissioners v. Coleman,* 235 Ky. 24, 29 S.W.2d 619 (1930)). KRS 446.090 provides in part that

> if any of the statute be held unconstitutional the remaining parts shall remain in force, unless the statute provides otherwise, or the remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the General Assembly would not have enacted the remaining parts without the unconstitutional part. . . .

Thus, the question to be addressed is whether the criminal penalties of this statutory enforcement scheme can be severed and stand alone.

The structure of the statutory enforcement scheme does not lend itself to severability. Because the Registry has exclusive jurisdiction to decide whether a *knowing* campaign violation has occurred, the grand jury may not indict absent such a determination. The language of the statutory scheme makes an administrative finding by a politically appointed executive branch commission a *prerequisite* to indictment by the grand jury operating under the direction of the Court of Justice. Thus, the prosecution of *knowing* campaign finance violations is "essentially and inseparably connected with and dependent upon" the Registry's prior probable cause determination of a *knowing* violation. *Bailey v. Runyon,* Ky., 293 S.W.2d 631, 633 (1956). If, under this scheme, the Registry decides a violation is *not knowing,* no further action may be taken. This is an illegal and unacceptable result.

Even if it is true that the statutes in question grant non-exclusive jurisdiction to the Registry, to sever KRS 121.140(5) from the rest of the statutory scheme destroys the regulatory process created by the General Assembly as it removes the Registry from enforcement of *knowing* violations of the

statutes. For example, if the Registry were to find that *no knowing* violation had occurred, yet a grand jury decided to indict anyway, the grand jury would effectively be acting in contravention of KRS 121.140(7) which prohibits appeals of the Registry's probable cause determinations. This renders KRS 121.140(7) meaningless in contravention of the principle that all of the language of a statute is to be given effect. *Combs v. Hubb Coal Corp.,* Ky., 934 S.W.2d 250, 252 (1996).

Moreover, even if KRS 121.120(5) and 121.140(5) could be severed, the remainder of the campaign finance laws are not enforceable because the criminal penalties cannot stay in place. To be enforceable, what is left after severance would have to be "fully operable as law." *Tri–City Turf Club, Inc. v. Public Protec. & Reg. Cabinet,* Ky.App., 806 S.W.2d 394, 397 (1991), *dis. rev. denied.* I find that what is left after the severance is not fully operable. Only *knowing* violations of the campaign finance laws may be criminally prosecuted. KRS 121.140(5) and 121.990. Thus, whether one views the jurisdictional issue as exclusive or non-exclusive, under the terms of these statutes a crime is not created unless the Registry makes a determination that a *knowing* violation occurred. According to KRS 121.140, the General Assembly set forth the three-step investigatory process to be used by the Registry culminating in referral for prosecution of knowing violations after the Registry makes the appropriate finding. The penalties of KRS 121.990 for *knowing* violations are predicated upon the Registry's finding that a knowing violation occurred.

If, then, the Registry is removed from the process, the felony and misdemeanor punishments for *knowing* violations, as defined in these statutes, would be removed from the penalties of KRS 121.990. The remaining statutes would create a some sort of crime for their violation, but the crime would have no penalty. Nor could this Court impose a penalty to bridge the gap. Courts cannot impose common law punishments, but are restricted to imposing only the penalties prescribed by the statute. *See Huyser v. Commonwealth,* Ky., 116 Ky. 410, 76 S.W. 174,

176 (1903). A court may not graft a penalty onto a statute that has no penalty. *Cf. Commonwealth v. McClure,* Ky.App., 593 S.W.2d 92, 96 (1979), *dis. rev. denied* (1980).

Given these facts, I believe that there can be no question that the General Assembly would not have permitted the criminal penalties of this statute to stand alone. The General Assembly enacted a clearly unconstitutional statute and created a crime which can only be prosecuted by means of that statute; these statutes are inexorably intertwined. Accordingly, since the criminal penalties are "essentially and inseparably connected and dependent upon" the enforcement scheme set forth in KRS 121.120(5) and 121.140(5), I would strike as unconstitutional KRS 121.120(5), KRS 121.140(5) and KRS 121.990, except KRS 121.990(5) (injunctive relief) and KRS 121.990(13) (civil penalties). *See Commonwealth v. Cullum,* Ky., 494 S.W.2d 521, 521 (1973); *Engle v. Bonnie,* 305 Ky. 850, 854, 204 S.W.2d 963, 965 (1947).

## V. CONCLUSION

To summarize, I would hold that this statutory scheme is unconstitutional on several bases. First, the separation of powers doctrine is violated by the granting of a uniquely judicial power, the finding of probable cause to prosecute, to the executive. Second, the inherent rulemaking power of this Court is usurped by the General Assembly in modifying our established procedures with regard to both findings of probable cause and the operation of grand juries. Third, the statutory scheme impermissibly dispossesses the grand jury of its constitutionally awarded powers. Fourth, it violates the due process guarantees of the United States and Kentucky Constitutions. Since I believe that the General Assembly would not have enacted the criminal penalties without the limitation on their use, I would hold them non-severable. For these reasons I would strike as unconstitutional KRS 121.120(5), KRS 121.140(5) and KRS 121.990, except KRS 121.990(5) (injunctive relief) and KRS 121.990(13) (civil penalties). I would grant the petitions for writ of prohibition regarding any action of the grand jury based on alleged violations of the campaign finance laws. It is the function of the judiciary to declare the law, not to make it. While it is unfortunate that the unconstitutionality of this statutory scheme renders it unenforceable, only the General Assembly can correct the problem, not this Court.